# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**                                    **Case No. 18-CR-3495 JCH**

    **vs.**

**DOUGLAS D. SMITH,**

    **Defendant.**

## DEFENDANT'S MOTION TO DISMISS FOR LACK OF FEDERAL JURISDICTION

Mr. Douglas Smith, by and through undersigned counsel, Assistant Federal Public Defender Aric G. Elsenheimer, moves to dismiss the indictment in this case on the grounds that the Court lacks jurisdiction to hear this case. The Court lacks jurisdiction because the 1924 Pueblo Land's Act extinguished federal jurisdiction over the land in question and the 2005 Amendment to the Pueblo Land's Act was an unconstitutional exercise of Congressional authority.

1

**I    Background**

**A    Factual background**

The facts in this case are largely undisputed. In the early morning hours of May 5, 2018, Douglas Smith was at his home in Espanola, New Mexico. Since November of 2017, Mr. Smith had experienced several break-ins at his property. Between November and December of that year, he and his brothers, who also live on his property, experienced four break-ins. In response, they put up motion sensors. One of these motion sensors was affixed to a trailer behind his house. This sensor made a doorbell-like sound when someone walked through his back gate.

On the night of May 4, or the early morning hours of May 5, Mr. Smith heard his sensor sound. He thought it was just raccoons. Because he had several encounters in the recent past with people trespassing on his property, Mr. Smith grabbed his gun, as a matter of safety. He opened his back door and stepped out onto a small step behind his house.

Mr. Smith looked out and heard someone at the trailer and saw a shadow of a person crouching and looking in his direction. Mr. Smith was scared, and fired his pistol off to the left of the person to scare them away. He then saw the person take off running to his left, around the property. Mr. Smith believed they had run from his property and, scared because someone had been trespassing on his property, fired three more times. He shot at a woodpile on his property and wanted to scare the person because, as he said in his interview, "scaring them is better than shooting them." Mr. Smith was not shooting at anyone at that point, and as he said, was just shooting to scare the person and get them to run off his property.

Mr. Smith then walked over to his truck and tried to put more bullets in his gun, but he was shaking too much and stopped trying to re-load. He then went around the trailer and walked to the driveway. There, he saw somebody laying on the ground. He turned the person over and saw it was a woman. He told his neighbor that he had shot someone, and his neighbor said to call 911. He immediately called 911.

**B    Jurisdictional background**

Mr. Smith's house is in Española, New Mexico. The government will likely assert that the Court has jurisdiction under the 2005 Amendment to the Pueblo Lands Act. The federal government does not have jurisdiction because the 2005 Amendment to the Pueblo Lands Act was an unconstitutional exercise of congressional authority.

## II    Legal analysis

Federal courts have power to hear only cases within the judicial power of the United States—as set forth in the Constitution or laws passed by Congress. *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004). "The requirement that jurisdiction be established as a threshold matter is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379 (1884)).   The necessity that courts ensure that they have subject matter jurisdiction in a given case "is not a mere nicety of legal metaphysics," but essential to the rule of law in "a free society .... The courts, no less than the political branches of government, must respect the limits of their

authority." *Hydro Resources, Inc. v. U.S. E.P.A.*, 608 F.3d 1131, 1144 (10th Cir.

2010) (quoting *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*,

487 U.S. 72, 77 (1988)). *See also Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d

1018, 1022 (10th Cir. 2012) (same).

A federal court must presume that it does not have subject matter

jurisdiction; where jurisdiction has been challenged, the party seeking to

invoke it has the burden to establish the contrary by a preponderance of

the evidence. *Vaden v. Discover Bank*, 556 U.S. 49, 69-70 (2009); *Becker v. Ute*

*Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947 (10th Cir.

2014) (quoting *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 377

(1994)); *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994)). That

party must affirmatively allege the facts supporting jurisdiction. *McNutt v.*

*General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Bustillos*, 31 F.3d at

933. A challenge to the court's jurisdiction may be raised at any time. Fed.

R. Crim. P. 12(b)(2) ("A motion that the court lacks jurisdiction may be

made at any time while the case is pending."). When jurisdiction has not

been proved, courts are without power to proceed and must dismiss the

cause. *Steel Co.*, 523 U.S. at 94.

In the Indian Pueblo Land Act Amendments of 2005, Congress provided for federal criminal jurisdiction over offenses committed within the exterior boundaries of a grant from a prior sovereign "except as otherwise provided by Congress." As the Tenth Circuit explained in *United States v. Arrieta*, 436 F.3d 1246, 1249 (10th Cir. 2006), the New Mexico pueblos acquired title to their lands by a grant from the King of Spain. *Id.* at 1249. In the Treaty of Guadalupe-Hidalgo, 9 Stat. 922 (1848), Mexico ceded to the United States a large land mass which included the lands in the territory of New Mexico on which the Pueblo Indians resided. *Id.* at 929.   The treaty "provided that Mexican property rights in the ceded lands 'shall be inviolably respected.'" *Sanchez v. Taylor*, 377 F.2d 733, 735 (10th Cir. 1967) (quoting 9 Stat. 922, 929).

The land tract on which the alleged offense in this case occurred was patented to non-Indians Alfred Lucero, Antonia F. de Lucero, and Pleasant Henry Hill, Jr. under the provisions of the Pueblo Land Act ("PLA"), 43 Stat. 636 (1924). (Exhibit A 1 and A 2.) The PLA established the Pueblo

Lands Board and authorized it to ascertain the exterior boundaries of the pueblos, to determine land status, and to settle conflicting land claims by New Mexico Pueblo members and non-Indian citizens. *Id.* at 36; § 2, 43 Stat. 636; *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 240, 244 (1985). The Board was instructed to award compensation to Pueblos for losses suffered due to failure of the United States to protect their rights, § 6, 43 Stat. at 638, and to report on possible purchases for the Pueblos of some lands validly held by non-Indians. § 8, 43 Stat. at 639. The PLA provided for judicial determination of the area and value of lands where non-Indian claims based on Spanish or Mexican grants were superior to Indian claims. § 14, 43 Stat. at 641. If non-Indian claims to land that had been occupied and improved in good faith were not upheld, the court was to make findings as to the value of the improvements and the Secretary of the Interior was to submit a report to Congress with recommendations concerning compensation.   § 15, 43 Stat. at 641.

The Pueblo Lands Board issued patents to non-Indians whose adverse claims were found valid; "[t]he Pueblos' rights to such land were

7

extinguished." *Arrieta*, 436 F.3d at 1249-50 (citing PLA, § 4; 43 Stat. at 637,

*Mountain States Tel. & Tel.*, 472 U.S. at 244)). The United States and the

Indians of the Pueblo relinquished its claims to those lands. § 13, 43 Stat. at

640.

It is the prerogative of Congress to determine "what land is Indian

country subject to federal jurisdiction." *Hydro Resources*, 608 F.3d at 1151

(citing *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520

(1998)).   " . . . [T]he questions whether, to what extent, and for what time

[Indians] shall be recognized and dealt with as dependent tribes requiring

the guardianship and protection of the United States are to be determined

by Congress, and not by the courts." *United States v. Sandoval*, 231 U.S. 28,

46 (1913) (citing *United States v. Holliday*, 70 U.S. 407, 419 (1865)).

"[T]he exclusive right of the United States to extinguish Indian title has

never been doubted." *United States v. Santa Fe Pacific Railroad Co.*, 314 U.S.

339, 343-44 (1941). Congressional intent to extinguish Indian title must be

"plain and unambiguous." *United States v. Santa Fe Pacific R. Co.,* 314 U.S.

339, 346 (1941). The 1924 PLA unambiguously removed the land tract at

issue here from federal control. Congress clearly extinguished all rights of the Pueblo to that tract, relinquished all federal claims, and removed that tract from federal trust responsibility and protection.

The Enabling Act of New Mexico of June 20, 1910, 36 Stat. 557, supports the conclusion that the extinguishment of Pueblo title removed land such as the tract at issue here from federal jurisdiction and control. It states in Section 2:

> Second.   That the people inhabiting said proposed State do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof and to all lands lying within said boundaries owned or held by any Indian or Indian tribes the right or title to which shall have been acquired through or from the United States or any prior sovereignty, and that *until the title of such Indian or Indian tribes shall have been extinguished the same shall be and remain subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States; ...*

*Id.* at 558-59 (emphasis added).

The 1924 Pueblo Lands Act extinguished federal and tribal jurisdiction to the land now owned by Mr. Smith and his brothers. As one district court recognized in 2000, "[w]hile the land in question may at one time have been Indian Country, the Pueblo Lands Act of 1924 (43 Stat. 636) clearly and

9

intentionally quieted title to the land in question against the Pueblo of Santa Clara. Consequently, the land in question no longer satisfies the federal set-aside requirement necessary for a finding of "Indian Country" and this Court cannot exercise subject matter jurisdiction in this case." *United States v. Gutierrez*, 00-M-375 D.N.M. LH, attached as Exhibit B.

The 2005 Amendment to the Pueblo Lands Act sought to reclaim jurisdiction over land, the federal and tribal authority that Congress had extinguished in the 1924 Pueblo Lands Act. This effort had no Constitutional basis and thus is unconstitutional.

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000). "The powers of the legislature are defined and limited; and that those limits may not be mistaken, or forgotten, the constitution is written." *Marbury v. Madison*, 5 U.S. 137, 176 (1803). The Judicial Branch may only "invalidate a congressional enactment" "upon a plain showing that Congress has exceeded its constitutional bounds." *Morrison*, 529 U.S. at 607.

There is no Constitutional basis for Congress' enactment of the 2005

Amendment to the Pueblo Lands Act. Congress' enactment of the 2005

Amendment to the Pueblo Lands Act has no basis in Congress' authority

under Article I of the Constitution. Moreover, because that Act did not

pertain to the regulation of tribal governments, the Act does not arise under

Congress' plenary authority to regulate the Indian tribes. *United States v.*

*Kagama*, 6 S.Ct. 1109 (1886). There is no Congressional authority to act in the

absence of one of these two bases of Congressional authority. Absent a

specific enumeration of Congressional authority in Article I of the

Constitution, or an act taken to regulate a tribal government, the 2005

Amendment to the Pueblo Lands Act has no valid legal basis and is thus

unconstitutional.

In the vast, and often tangled body of federal "Indian Country"

jurisprudence, there is not a single instance of the Court concluding that

Congress can re-assert jurisdiction out of whole cloth over land for which

federal and Indian title had been extinguished and that appeared, by every

other metric, to be no different from other land in the larger state. That is the

case here. Mr. Smith's land was originally part of a larger parcel over which

Indian title was extinguished. The land was not held in trust, but rather held in fee simple by the three individuals who received a patent for the land. Title to the land was then passed down and ultimately ended in the hands of Mr. Smith and his brothers. (Exhibit D). Mr. Smith pays county taxes on this land, and it is subject to the real property laws of the State of New Mexico. (Exhibit E). It is within the larger community of Española, an incorporated town within the State of New Mexico. (Exhibit C.) The Town of Española itself describes Mr. Smith's property to be within the Municipal Boundary and not on the Santa Clara Pueblo. (*Id.*) There is nothing to distinguish Mr. Smith's property from the property of someone living in Nob Hill of Albuquerque, the East Mesa of Las Cruces, or any other municipal tract of land in the State of New Mexico. There is, therefore, no Constitutional basis on which the Federal Government and this Court can establish Federal Criminal Jurisdiction over Mr. Smith's property. Just as the Federal Government could not assert, with a flick of its pen, Federal Criminal Jurisdiction over a house in Albuquerque's Ridgecrest neighborhood, it similarly cannot do so over a track of land in Española on the legally

obsolete ground that that land had once been within a Pueblo Land Grant.

WHEREFORE, Mr. Smith, by and through undersigned counsel, respectfully requests that this Court dismiss the indictment in this case on the ground that the Federal District Court lacks jurisdiction over the offense alleged in the indictment.

Respectfully Submitted,

**FEDERAL PUBLIC DEFENDER**
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

***Electronically filed April 3, 2020***
/s/ Aric G. Elsenheimer
Assistant Federal Public Defender