IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                                          Case No. CR 18-03495-001 JCH

DOUGLAS SMITH,

    Defendant.

### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Mr. Smith, by and through undersigned counsel Aric G. Elsenheimer and Amanda R. Lavin, Assistant Federal Defenders, hereby moves the court to suppress all evidence obtained from the execution of a warrant at his property at 825 North Riverside Drive in Espanola, New Mexico, on August 22, 2019, for lack of probable cause.  Mr. Smith's motion is made pursuant to the Fourth Amendment of the United States Constitution and Rule 12(b)(3)[C] of the Federal Rules of Criminal Procedure. The Defense specifically requests a hearing on this motion to address any legal or

evidentiary issues pertaining to the resolution of this motion. As grounds, Mr. Smith states as follows:

**Statement of Facts**

1. In the early hours of the morning on May 15, 2018, an unknown intruder attempted to break into Mr. Smith's camper trailer located on his property, the Western Winds Motel, at 825 North Riverside Drive, Espanola, New Mexico.

2. Mr. Smith had installed movement sensors on his property due to the numerous break-ins at his home. The motion sensors were triggered three times the night of May 4, 2018 and during the early hours of May 5, 2018.

3. The first two times the sensors were triggered, Mr. Smith went outside to inspect his property but did not see anyone. When Mr. Smith heard the movement sensors go off in the middle of the night for the third time, he rose from bed and went to his back porch with a pistol.

4. From his back porch, he saw the shadow of an intruder crouched in front of his camper trailer. Scared witless, he fired several

warning shots to the left of the shadow into the woodpile, to scare the intruder away.

5. After Mr. Smith fired the shots, he searched his property to see if the intruder was still there.

6. He discovered the body of a woman – who the indictment identifies as Jane Doe – lying on the ground.

7. Mr. Smith called 911 and advised dispatch that he had "shot someone."

8. The Espanola Police Department (EPD) arrived at the scene to investigate the incident. Although the officers' first impression was that Jane Doe was shot in the forehead – leading to misrepresentation of the facts of this case by media outlets – it was eventually determined that Jane Doe died of a single gunshot wound to her left temple and that the forehead injury was not caused by a bullet. During EPD's investigation, they realized Jane Doe was a member of the Santa Clara Pueblo, and that Mr. Smith's property lies within the exterior boundaries of the original Santa Clara land grant.

9. The FBI was contacted and Special Agent Travis Taylor became involved in the case.

10. Mr. Smith stated during interviews with law enforcement that he had "shot to miss" on one prior occasion when an intruder had attempted to burglarize his property.

11. Mr. Smith clarified on multiple occasions during his interviews with law enforcement that he could not see the intruder (Jane Doe), he shot his pistol in order to scare away the intruder, he thought he was aiming away from the intruder, and that he fired the last few shots because he thought the intruder had left and wanted to scare the person away.

12. The night of May 5, 2018, evidence was collected from Mr. Smith's property, including four spent .22 casings that were found on the ground. The search began in the dark and continued into daylight hours. Sixty-five photographs were taken by the Espanola Police Department and 54 photographs were taken by the office of medical investigator examiner.

13. On May 8, 2018, a criminal complaint was filed in the United States District Court District of New Mexico, charging Mr. Smith with one

4

count of second degree murder, in violation of 18 U.S.C. § 1151 and 18 U.S.C. § 1111(a). (Doc. 2).

14. Mr. Smith was released from the custody of the United States Marshal's service on May 9, 2018, and went to reside at the La Pasada Halfway house (Doc. 8).

15. Mr. Smith was released to the third party custody of his brother on July 5, 2018, and returned home to live at 825 North Riverside Drive in Española, NM (Doc. 19).

16. Mr. Smith has resided at his home since July 2018.

17. Over a year after the incident, on August 15, 2019, Agent Taylor of the FBI sought a warrant to search Mr. Smith's property at 825 North Riverside Drive, in Espanola, New Mexico. *See Appendix Exhibit A – Search Warrant Dated August 15, 2019.*[1]

18. Agent Taylor's affidavit seeks evidence for the crime of second-degree murder in the form of photographs, spherical photography, 3D

---

[1] Exhibits referred to in this motion are in reference to exhibits contained in an appendix the defense will file following the filing of the instant motion. Because these exhibits are also referred to in other motions, in the interest of conserving resources, the defense is filing all of those exhibits under an appendix.

5

scanning, trajectory analysis, and videography of the exterior of the property.

19.     The warrant was executed on August 22, 2019.

20.     Undersigned counsel were not informed about the warrant nor of its execution, until Mr. Smith contacted his counsel on August 22, 2019 because there were FBI agents at his house.

21.     Based on information and belief, agents were inside Mr. Smith's home as well as outside. Despite the fact Mr. Smith has been represented by counsel since May of 2018, government agents made contact with Mr. Smith on August 22, 2019 without advising his counsel.

22.     Mr. Smith's brother also lives on the property. In addition, there is a long-term tenant who lives in what used be the hotel property.

23.     There are many tall shrubs and bushes that surround Mr. Smith's back patio where his back door opens. These shrubs were fully leafed out in May 2018 when this incident occurred.

24.     The shrubs require regular pruning and maintenance.

25.   Based on information and belief, the foliage and shrubs between Mr. Smith's porch and the area where Jane Doe's body was found have been trimmed and altered since May 5, 2018.

26.   During agents' execution of the warrant, photographs of the property were taken and 3D scans were made.

27.   A trajectory analysis was completed by Theodore Chavez with the Firearms Unit of the FBI.

28.   Mr. Chavez identified two holes that he suspected were caused by bullets. In his report, he notes that the holes were caused by "bullets/debris." One hole was identified in the corrugated metal siding of a shed, and Mr. Chavez noted the trajectory of whatever caused the hole continued to make a hole in a television stored in Mr. Smith's shed. Mr. Chavez identified the other suspected bullet hole in the camper trailer. A trajectory from this hole could not be determined.

29.   The same suspected bullet holes analyzed by Mr. Chavez were identified by law enforcement during the initial investigation of the case. Discovery received from the government on June 6, 2018, includes an aerial

map of Mr. Smith's property, with handwritten notes indicating that there were suspected impact locations on the shed, the trailer, and in the trees. The areal map also indicates estimated trajectories. From the evidence collected by agents on August 22, 2019, the government has informed the defense that agents created a 3D model of the scene.

**Argument**

The warrant lacks probable cause to support a search for evidence of an alleged homicide that occurred approximately 15 months earlier. The affidavit for the warrant offers no support for its proposition that there would still be evidence of a shooting that took place more than one year prior. In addition, it was not reasonable for the agents executing the warrant to rely on the warrant given the warrant's deficiencies. The evidence obtained from execution of the warrant on August 22, 2019, including photographs, 3D scans, trajectory analysis, and the 3D model, should be excluded from use by the government at any trial or hearing in this case.

i. *The warrant lacks probable cause*

A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted. When a warrant is stale, probable cause does not exist at the time of the search. *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009). Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched. *United States v. Mathis,* 357 F.3d 1200, 1206–07 (10th Cir.2004).  Whether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized. *Id.* at 1207. "Ongoing and continuous activity makes the passage of time less critical when judging the staleness of information upon which a search warrant is based," because evidence of a longstanding pattern of repeated activity makes it less likely that the activity has ceased within a short time frame. *United States v. Roach,* 582 F.3d 1192, 1201 (10th Cir. 2009).

Probable cause requires a nexus between suspected criminal activity and the place to be searched. This belief "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Snow,* 919 F.2d 1458, 1459 (10th Cir.1990). Recent evidence of continuing illegal activity may corroborate and refresh dated or stale information. *See United States v. Harris,* 369 F.3d 1157, 1165–66 (10th Cir.2004).

The information in the warrant for the search of Mr. Smith's home at 825 North Riverside Drive, in Espanola, New Mexico was stale. The incident occurred on May 5, 2018 and the warrant was not sought and executed until August 2019, a year and three months later. At least three people live on Mr. Smith's property. Either Mr. Smith, his tenant, or his brother could have moved things, conducted summertime landscaping and weeding on the property. The bushes through which Mr. Smith shot have been altered through maintenance and pruning, and likely have grown during the time that passed between the incident and application and execution of the warrant. The warrant provides no supporting details that

explain why photos of the property taken over a year later would accurately depict what the property looked like at the time of the incident. The affiant does not provide any details about the current status of the property nor offer any reassurance that the property will be in the same conditions it was in May of 2018. Moreover, there is no reference to photographs take close in time to the original incident that could serve as a standard of comparison for any subsequent search.

    There is no nexus between the shooting on May 5, 2018 and a search of the scene of the incident over a year later.   There is no information in the warrant to suggest how it would be possible, that over a year later, there would still be physical evidence of the shooting. The warrant states Mr. Smith told law enforcement that he had fired his pistol to warn other intruders on his property in the past; therefore, any projectiles, casings, or other evidence of a shooting may not even be connected to the shooting at issue in this case. The warrant is simply devoid of any details that rise to the level of probable cause to believe there still exists any evidence on the

property of a shooting, let alone the one that specifically occurred on May 5, 2018 that resulted in the death of Jane Doe.

   ii. *The good faith exception does not apply*

In *Leon,* the Supreme Court held that evidence seized pursuant to a facially valid warrant should not be suppressed if police were acting "with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." *United States v. Leon*, 104 S. Ct. 3405, 3415 (1984). The inquiry "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Reza*, 315 F. App'x 745, 748 (10th Cir. 2009).

The *Leon* good-faith exception does not apply when: (1) the magistrate judge issuing the warrant was misled by a deliberately or recklessly false affidavit; (2) the magistrate judge wholly abandoned his or her detached and neutral judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially

deficient ... that the executing officers cannot reasonably presume it to be valid. *Leon,* 104 S.Ct. 3405. In such instances, "a reasonably well trained officer would have known that the search was illegal, and, as a result, suppression of the unlawfully obtained evidence remains an appropriate remedy. *See United States v. Rowland,* 145 F.3d 1194, 1215–16 (10th Cir.1998) (discussing these limitations to the *Leon* good-faith exception).

    An officer does not act in good faith when he relies on an isolated criminal event occurring over a year prior as justification for the warrant. In *United States v. Cordova*, the Tenth Circuit held that the isolated fact of an attempted drug delivery to a car parked in front of the defendant's former house 21 months before issuance of the warrant provides neither evidence of the defendant's participation in such an ongoing enterprise nor evidence that his former home was being used in such an enterprise. 792 F.3d 1220, 1224 (10th Cir. 2015).

    Here, the shooting of Jane Doe that occurred 15 months earlier, and likewise, is of little assistance to law enforcement under the good faith analysis. The warrant merely restates the investigation that occurred in

13

May of 2018 immediately following the incident. There is no context or details that indicate how Mr. Smith's property in August 2019 would yield evidence of this alleged crime that occurred in May 2018. It was therefore unreasonable for law enforcement to presume the warrant was valid, and the appropriate remedy is suppression of the unlawfully obtained evidence

The government was aware of the existence of the possible bullet holes since the inception of the case. Agent Taylor fails to explain in the request for a warrant why he waited for 15 months to seek a warrant to analyze the suspected bullet holes and property and take 3D scans. Law enforcement photographed the scene in May of 2018, close in time to the incident. Agent Travis could not possibility have been unaware of this evidence that had already been collected, yet, he fails to explain in his request for the warrant why the initial investigation was insufficient, or why law enforcement waited so long to conduct follow up investigation. These shortcomings render reliance on the warrant unreasonable.

**Conclusion**

The search warrant for Mr. Smith's residence executed on August 22, 2019 is so lacking in indicia of probable cause that law enforcement officers' belief in the existence of probable cause was unreasonable. Furthermore, the agents' reliance on the warrant was not in good faith or objectively reasonable, given the facial deficiency of the warrant.

WHEREFORE, Mr. Smith respectfully requests the court suppress any and all evidence unlawfully obtained from execution of the warrant, including photographs, 3D scans and models created therefrom, as well as videos, statements, trajectory analysis and reports, and grant any other relief the court deems appropriate. A hearing is requested to address and clarify legal issues raised in this motion and to address any evidentiary questions that may arise.

Respectfully Submitted

**FEDERAL PUBLIC DEFENDER**
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494 Fax
aric_elsenheimer@fd.org
amanda_lavin@fd.org

*Electronically filed April 16, 2020*
/s/ *Aric G. Elsenheimer*
/s/ *Amanda R. Lavin*
Assistant Federal Public Defenders

16