IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Cr. No. 18-3495 JCH |
| | ) |
| **DOUGLAS D. SMITH**, | ) |
| | ) |
| Defendant. | ) |

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION

The United States hereby submits its response in opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 47). Defendant is charged with Second Degree Murder in violation of 18 U.S.C. §§ 1152 and 1111. Doc. 19. Defendant is alleged to have killed Jane Doe at his residence, which is located on a private claim within the boundaries of the Pueblo of Santa Clara. *See* Government's Exhibit 1. The land at issue here – 826 N. Riverside Drive in Espanola, Rio Arriba County, New Mexico, mainly in Section 2, Township 20N, Range 8E, NMPM – was transferred to Alfred Lucero, Antonia F. de Lucero, and Pleasant Henry Hill, Jr., under the provisions of the Pueblo Lands Act, via a patent issued by the United States executive on March 29, 1937 (Doc. 47-2 at 1). This land is located within the boundaries of the Pueblo of Santa Clara. *See* Docs. 47-1 at 3 and 47-2 at 1; Government's Exhibit 1. Defendant argues the Pueblo Lands Act of 1924 (1924 PLA) extinguished federal jurisdiction over the land Defendant holds, and the subsequent 2005 Amendment of the 1924 PLA (2005 Amendment) is unconstitutional. Doc. 47 at 1.

Contrary to Defendant's arguments, the 1924 PLA did not extinguish federal jurisdiction because extinguishment must be plain and unambiguous. Moreover, the codification of the 2005 Amendment is an exercise of recognized congressional plenary authority over Indian tribes and pueblos. Accordingly, the 2005 Amendment ensures the United States has federal criminal jurisdiction over crimes that occur within the exterior boundaries of the pueblos, regardless of who holds the land parcel. As such, the land Defendant holds within the exterior boundaries of the Pueblo of Santa Clara is Indian Country under 18 U.S.C. § 1151.

## ANALYSIS

The modern understanding of Indian Country has focused more on avoiding checkerboard jurisdiction, than tracking Indian title. *See Seymour v. Superintendent of Wash. State Penitentiary*, 368 U.S. 351, 358 (1962); *United States v. Antonio*, No. 16-CR-1106-JB, 2017 WL 3149361 at *27, n.11 (D.N.M. June 5, 2017) *aff'd*, 936 F.3d 1117 (10th Cir. 2019) ("[C]heckerboard jurisdiction within Indian country is both impractical and in tension with 18 U.S.C. § 1151(a)'s language and purpose.").

The 1948 enactment of 18 U.S.C. § 1151 significantly changed and superseded the prior understanding of Indian Country. "Indian Country" includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation." 18 U.S.C. § 1151(a). The Supreme Court concluded that "the issue has since been squarely put to rest by congressional enactment of the currently prevailing definition of Indian country in § 1151." *Seymour* , 368 U.S. at 356–57. Accordingly, "if the property is within boundaries of the reservation, it is Indian country irrespective of whether title is now held by a non-Indian." *United States v. Webb*, 219 F.3d 1127, 1131 (9th Cir. 2000) (citing 18 U.S.C. § 1151(a)).

The Tenth Circuit has recognized Pueblo land as dependent Indian communities "entitled to the aid and protection of the federal government and subject to congressional control," *United States v. Arrieta*, 436 F.3d 1246, 1249 (10th Cir. 2006). This District has determined that Pueblo land subject to the issuance of any patent is still Indian Country if the property lies within the boundaries of a Pueblo. *See United States v. Vigil*, No. CR 18-739-MV, 2019 WL 3881702 (D.N.M. Aug. 16, 2019), *see also Antonio*, 2017 WL 3149361 at *11 (citing William C. Canby, American Indian Law § 7.B, at 140 (5th Ed. 2009)); *see also Seymour,* 368 U.S. 356–57; *Webb*, 219 F.3d at 1131 (holding "if the property is within boundaries of the reservation, it is Indian country irrespective of whether title is now held by a non-Indian.").

In *Antonio*, the District Court examined whether fee land within the Pueblo of Sandia was Indian Country. The District Court noted that following the *Seymour* case, "the mere opening of a reservation for non-Indian settlement" does not remove the lands that non-Indians own in fee simple from Indian Country under 18 U.S.C. § 1151(a); however, "a congressional decision to abandon the reservation status of those lands does." *Antonio*, 2017 WL 3149361, at *12 (citing *American Indian Law* § 7.B, at 144). "If Congress clearly acts to disestablish or diminish reservation land, then the land is 'outside the reservation boundary, and therefore outside of Indian country under 18 U.S.C. § 1151(a).'" *Id.* (citing *Webb*, 219 F.3d at 1131).

Defendant attacks this general Indian Country legal framework by asserting the 1924 PLA extinguished federal jurisdiction. This District has previously rejected a similar argument that the 1924 PLA removed patented Pueblo lands from federal control. *Vigil*, 2019 WL 3881702, at *4. The Supreme Court established that Congress has: (i) the power to recognize "dependent tribes requiring the guardianship and protection of the United States;" (ii) the exclusive power "to determine for itself when the guardianship which has been maintained over

3

[protected Indian communities] shall cease;" and (iii) the power "to prohibit the introduction of liquor into ... the lands of the Pueblos," without unlawfully encroaching upon New Mexico's traditional police power. *See Sandoval*, 231 U.S. at 49 ("Being a legitimate exercise of that power, the legislation in question does not encroach upon the police power of the state, or disturb the principle of equality among the states."). As Defendant notes, "Congressional intent to extinguish Indian title must be 'plain and unambiguous'" (Doc. 47 at 8) (citing *United States v. Santa Fe Pacific R. Co.*, 314 U.S. 339, 346 (1941)). Accordingly, the Supreme Court determined that Pueblo lands were Indian country, subject to federal jurisdiction, even where Pueblo lands were not formally designated as reservations, unless explicitly excepted by Congress. *United States v. Sandoval*, 231 U.S. 28, 48–49 (1913).

Defendant agrees that congressional intent to extinguish must be unambiguous, yet Defendant cannot show the 1924 PLA extinguished title to Pueblo lands or to the parcel at issue in this case. The 1924 PLA makes no reference to 826 N. Riverside Drive in Espanola, Rio Arriba County, New Mexico, mainly in Section 2, Township 20N, Range 8E, NMPM. It was the Executive, not Congress, that subsequently issued the land patent quieting title to the land in favor of Alfred Lucero, Antonia F. de Lucero, and Pleasant Henry Hill, Jr. (Doc. 47-2 at 1). As the plain language of the 2005 Amendment indicates, only an act of *Congress*, can form the basis for an exception to federal jurisdiction. An act of the Pueblo Lands Board or the executive branch does not suffice. *See St. Charles Inv. Co. v. Comm'r*, 232 F.3d 773, 776 (10th Cir. 2000) ("It is a general rule of statutory construction that if a statute specifies exceptions to its general application, other exceptions not explicitly mentioned are excluded.") (citation and quotation omitted). Defendant cannot show Congress intended to relinquish federal control or remove the tract from the federal trust responsibility.

4

Moreover, Defendant's reliance on the 1910 Enabling Act of New Mexico (Doc. 47 at 9) does not support his argument that the 1924 PLA extinguished federal control over Pueblo lands or the land at issue in this case. There is no indication the Enabling Act, which predates the 1924 PLA, has any language that forms the basis for an exception to federal jurisdiction. The Enabling Act merely states that Indian land that has not been extinguished, remains under federal control. Defendant cannot show Congress intended to diminish Pueblo land through his reading of the Enabling Act because it is not clear or unambiguous. The Supreme Court's "analysis of surplus land Acts requires that Congress clearly evince an 'intent … to change …boundaries' before diminishment will be found." *Solem v. Bartlett,* 465 U.S. 463, 470 (1984) (*quoting Rosebud Sioux Tribe v. Kneip*, 430 U.S. 584, 615 (1977)). Consequently, "[d]iminishment … will not be lightly inferred." *Id.*

Prior to the 2005 Amendment, courts struggled with a checkerboard jurisdiction that made determination of Pueblo Indian Country difficult. The purpose of the 1924 PLA was to resolve competing claims by the Pueblos and non-Indians to Pueblo lands. *See Arrieta*, 436 F.3d at 1249-50 (discussing the history of the PLA). To accomplish this purpose, the 1924 PLA created the Pueblo Lands Board (Board) and endowed it with the power to issue patents quieting title to land in favor of non-Indians who met certain adverse possession requirements. *Id.* The Board was permitted to "investigate, determine and report" the ownership status of lands lying within the exterior boundaries of the Pueblo. 43 Stat. 636. The 1924 PLA does not address or otherwise purport to limit federal criminal jurisdiction over Pueblo lands. The 1924 PLA is focused on the narrow issue of quieting title to lands lying within the exterior boundaries of Pueblo lands. The Tenth Circuit, in consideration of the 1924 PLA, agreed that it only addressed how land disputes were to be resolved and it did not terminate federal jurisdiction. *See United*

*States v. Antonio*, 936 F.3d 1117, 1123 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 818 (2020) (This statute only addressed how land disputes were to be resolved—it did not affect the 1858 confirmation nor did it exempt any specific properties or terminate federal jurisdiction.). Accordingly, the 1924 PLA cannot be read to evince a congressional intent to extinguish federal jurisdiction over lands existing with the Pueblo boundaries.

The plain and straightforward language of the 2005 Amendment answers the question of whether the Court has jurisdiction in this case. Even if Defendant is correct that the 1924 PLA divested particular tracts of Indian Country status, Congress is well within its authority to go back to amend and clarify the statute in order to ensure federal jurisdiction over the totality of lands within the exterior boundaries of a Pueblo.

The 2005 Amendment leaves no doubt that the intention of Congress all along has been that all lands within the exterior boundaries of Pueblo grants would continue to be Indian Country, regardless of the title status of the land. The bill, S. 279, signed into law on December 20, 2005, amended the PLA, Act of June 7, 1924, ch. 331, 43 Stat. 636, by adding a new section 20 thereto, entitled "Criminal Jurisdiction." That new section, in its entirety, reads as follows:

> Section 20. Criminal Jurisdiction
>
> (a) *In General*. – Except as otherwise provided by Congress, jurisdiction over offenses committed anywhere within the exterior boundaries of any grant from a prior sovereign, as confirmed by Congress or the Court of Private Land Claims to a Pueblo Indian tribe of New Mexico, shall be as provided in this section.
>
> (b) *Jurisdiction of the Pueblo*. – The Pueblo has jurisdiction, as an act of the Pueblo's inherent power as an Indian tribe, over any offense committed by a member of the Pueblo or an Indian as defined in title 25, sections 1301(2) and 1301(4), or by any other Indian-owned entity.
>
> (c) *Jurisdiction of the United States*. – The United States has jurisdiction over any offense described in chapter 53 of title 18, United States Code, committed by or

> against an Indian as defined in title 25, sections 1301(2) and 1301(4) or any Indian-owned entity, or that involves any Indian property or interest.
>
> (d) *Jurisdiction of the State of New Mexico.* – The State of New Mexico shall have jurisdiction over any offense committed by a person who is not a member of a Pueblo or an Indian as defined in title 25, sections 1301(2) and 1301(4), which offense is not subject to the jurisdiction of the United States.

Importantly, the section sets forth the jurisdictional rules that apply "anywhere within the exterior boundaries of any grant from a prior sovereign" regardless of land ownership or status. It affirms that within that area, the United States "has jurisdiction over any offense described in Chapter 53 of Title 18, United States Code, committed by or against an Indian." These jurisdictional rules plainly override Defendant's contention that federal control was extinguished. Defendant's home is located "within the exterior boundaries" of the Pueblo of Santa Clara, and the cases clearly show that these rules should apply here.

The 2005 Amendment was intended to clarify criminal jurisdiction following the issuance of patents under the 1924 PLA, not to make new law. Congress amended the 1924 PLA, rather than simply enacting a free-standing law, which indicates the intention to make clear what was originally intended by the 1924 PLA. Statements on the floor of the House of Representatives by Rep. Udall of New Mexico, Rep. Udall of Colorado, and Rep. Radanovich of California, in support of S. 279, consistently referred to the bill as one that would "clarify" the jurisdiction of the state, the United States, and pueblos within the exterior boundaries of pueblo grants. 151 Cong.Rec. H11047 (daily ed. Dec. 6, 2005). Rep. Radanovich further explained that the United States had consistently prosecuted Indian defendants for crimes arising on private lands within the boundaries of pueblo grants until the court in *United States v. Gutierrez*, No. Cr. 00-M-375 LH (December 1, 2000), attached as Exhibit B to Defendant's Motion to Dismiss (Doc. 47-3), held that an offense occurred on privately held land which, prior to the 1924 PLA,

had been owned by the Pueblo of Santa Clara could not be Indian Country. Concerned that this decision would result in a jurisdictional gap, the Senate committee report discussing the amendment explains that Congress was motivated to pass the 2005 Amendment because of the concern over "the potential for a void in criminal jurisdiction on Pueblo lands" that resulted from a federal district court decision in the District of New Mexico. S. Rep. No. 108-406 (2004). As such, the 2005 Amendment was seen as correcting an aberrant court decision, to make clear that the earlier, and longstanding, understanding of the law was correct. *Cf.* 1A SINGER, SUTHERLAND STATUTORY CONSTRUCTION (5th ed. 1993) § 22.31, p. 279 ("An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute."). (Footnote omitted.).The purpose of the law was to avoid lawless enclaves within Pueblo lands.

In addition to the federal *Gutierrez* case, New Mexico courts had similarly specified that state courts lacked jurisdiction over crimes taking place on non-Indian fee land within Pueblo boundaries. *See State v. Ortiz,* 105 N.M. 308 (Ct. App. 1986) (overruled on other grounds); *also see State v. Romero,* 142 P.3d 887, 896 (N.M. 2006) (holding that the state lacks criminal jurisdiction over Indian defendants on all lands within original exterior boundaries of pueblo grants, including lands now privately held). A ruling in Defendant's favor creates a category of land over which neither state nor federal government may exercise criminal jurisdiction for Indian-related crimes. This is precisely the scenario the 2005 Amendment intended to avoid.

Finally, Defendant argues there is no constitutional basis for Congress' enactment of the 2005 Amendment under Article I of the Constitution (Doc. 47 at 10-11), nor does the Act pertain to the regulation of tribal governments, so Congress lacks plenary authority to regulate the Indian

tribes (Doc. 47 at 11). Defendant does not sufficiently articulate how "the Act did not pertain to the regulation of tribal governments" and therefore congressional plenary power does apply. *Id*.

Defendant's argument ignores Article 1, Section 8 of the Constitution that endows Congress with the authority to "regulate commerce… with Indian tribes." Often referred to as the Indian Commerce Clause, the Supreme Court consistently has held that the Indian Commerce Clause grants Congress broad and exclusive authority to legislate in the field of Indian affairs. *See United States v. Lara,* 541 U.S. 193, 200 (2004) ("[T]he Constitution grants Congress broad general powers to legislate in respect to Indian tribes, powers that we have consistently described as 'plenary and exclusive.'") (citations omitted); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 62 (1996) (overruled on other grounds) ("If anything, the Indian Commerce Clause accomplishes a greater transfer of power from the States to the Federal Government than does the Interstate Commerce Clause."); *Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163, 192 (1989) ("[T]he central function of the Indian Commerce Clause is to provide Congress with plenary power to legislate in the field of Indian affairs.") (citations omitted); *Oneida County N.Y. v. Oneida Indian Nation of N.Y.*, 470 U.S. 226, 234-35 (1985) ("With the adoption of the Constitution, Indian relations became the exclusive province of federal law."); *S.D. v. Yankton Sioux Tribe,* 522 U.S. 329 (1998) ("Congress possesses plenary power over Indian affairs, including the power to modify or eliminate tribal rights."); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) (Congress has plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess.); *United States v. Wheeler*, 435 U.S. 313, 319 (1978) (overruled on other grounds) (Congress has plenary authority to legislate for the Indian tribes in all matters, including their form of government). The body of federal Indian law is built on the concept that Indian tribes and Pueblos are subject to plenary control by Congress.

Moreover, congressional legislation concerning Indian affairs is not racial because it is based on political status of Indians. *United States v. Antelope,* 430 U.S. 641, 646 (1977) ("federal regulation of Indian affairs is not based upon impermissible classifications. Rather, such regulation is rooted in the unique status of Indians as a 'separate people' with their own political institutions ...") (*quoting Morton,* 417 U.S. at 553, n.24); *see also* Felix Cohen, *Cohen's Handbook of Federal Indian Law* § 14.01[2][b][ii] ("The unique status of Indian tribes under the Constitution and treaties establishes a legitimate purpose for singling out Indians as a class."). Not only does Congress have plenary authority to enact the 2005 Amendment, this legislation need only be tied rationally to the fulfillment of Congress' unique obligation towards the Pueblos.

A ruling in Defendant's favor would create a category of land over which neither state nor federal government may exercise criminal jurisdiction for Indian-related crimes. This is precisely the scenario the 2005 Amendment intended to avoid. This Court should not interpret a statute in a manner that thwarts clearly expressed Congressional intent. *United States v. White*, 782 F.3d 1118, 1132 (10th Cir. 2015) ("[W]hen interpreting a statute, we attempt to give effect to Congressional intent.") (citation omitted).

WHEREFORE, based on the foregoing, the United States respectfully requests Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction be denied.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically filed on 04/16/20*
NOVALINE D. WILSON
KYLE T. NAYBACK
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 224-1419

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause a copy of this filing to be sent to counsel for Defendant.

*/s/*
NOVALINE D. WILSON
Assistant United States Attorney