IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 18-3495 JCH |
| ) | |
| ) | |
| **DOUGLAS D. SMITH**, ) | |
| ) | |
| Defendant. ) | |

### UNITED STATES' NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States hereby provides notice of its intent to introduce evidence of other crimes, wrongs or acts of Defendant. The United States seeks to introduce two types of other bad acts against the Defendant. First, the United States seeks to introduce evidence of a prior incident of Defendant shooting at another trespasser on his property, as evidence of intent, motive, and the absence of mistake or accident to show Defendant's wanton disregard for human life. Second, the United States seeks to introduce evidence that Defendant referred to himself as "motel cop" and carried a firearm on his property and confronted other individuals at the motel while armed, as evidence of intent, motive and absence of mistake or accident.

### FACTUAL BACKGROUND

During the early morning of May 5, 2018, Defendant, manager of the Western Winds Motel in Espanola, New Mexico, was alerted on three occasions to movement in his yard. Armed with a firearm, Defendant went outside twice to check the premises and saw nothing, but on the third occasion he observed a shadow attempting to hide behind bushes near a camper on his property. Defendant then began shooting in the direction of the shadow and continued to do

so as the figure ran towards the street. After attempting to reload his firearm, Defendant searched the area and saw the body of a female on the ground. Defendant was initially concerned that he had shot a female resident of the motel and went to turn over the victim. Another resident of the motel opened her door, shined her flashlight on the body of the deceased, and told Defendant to call the authorities. Espanola Police Department officers responded to the scene, and Detective Byron Abeyta (Detective Abeyta) interviewed Defendant on May 5, 2020, who alleged that he had experienced recent burglaries and trouble with trespassers. FBI Special Agents Travis Taylor (SA Taylor) and Michelle Cobb (SA Cobb) later interviewed Defendant on May 7, 2020. Defendant admitted that he saw eyeballs before he shot. He also admitted that Jane Doe did not approach him, nor did he see any weapons in her hands.

During his interview with Detective Abeyta, Defendant explained during the prior month that he saw a male trespasser near the same camper trailer and Defendant discharged his firearm. Defendant stated, "he took off running, and I went pow, pow, pow again, just like I did with this girl." Doc 66, Government's Exhibit 2, at 13:8-9. Defendant stated that he shot to miss when discharging his firearm multiple times during his encounter with the male trespasser, but also stated he did just like he did with this girl. During his interviews with Detective Abeyta and SAs Tylor and Cobb, Defendant drew out the path of his shooting trajectory starting at the camper. Defendant draws multiple lines that fan out showing that each sequential shot moves to the left as Jane Doe fled. Doc. 61-1, Government's Exhibit 1. Defendant admits that both the male trespasser and Jane Doe ran away during the time he discharged his firearm multiple times.

During his May 7, 2018 interview with SAs Taylor and Cobb, Defendant called himself "motel cop" and stated that it is the hardest part of his job at the motel. Doc 66, Government's Exhibit 3, at 20:7-9 . Defendant explained he previously confronted motel patrons with the same

2

firearm he used to kill Jane Doe. *Id*. at 22:4-10. A man and woman who were staying at the motel were engaged in domestic violence. Defendant is not sure exactly when this incident took places and tells the agents it was possibly twenty years ago. *Id.* at 46:16-20. SA Taylor asked if there were other incidents when Defendant took his pistol based on Defendant's perception of a threat. *Id*. at 22:23-25. Defendant stated yes, although he could not think of them at the time. *Id*. at 23:1-2. The United States anticipates calling law enforcement to testify about Defendant's statements, which are admissible as admissions.

## APPLICABLE LAW

Federal Rule of Evidence 404(b) allows the admission of evidence of crimes, wrongs, or acts, other than those charged in the indictment, if relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id*. In order for evidence of other acts to be admissible pursuant to Rule 404(b), the evidence must be offered for a proper purpose, and it must be relevant. *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *United States v. Hill*, 60 F.3d 672, 676 (10th Cir. 1995).

Rule 404(b) is an inclusive rule and the evidence is to be admitted as long as it proves something other than criminal propensity and bad character, even if the evidence also demonstrates propensity. *See United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007) (citing *United States v. Cherry*, 433 F.3d 698, 701 (10th Cir. 2005) and *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)). Rule 404(b)'s list of proper purposes, however, are "illustrative, not exhaustive." *United States v. Henthorn*, 864 F.3d 1241, 1248 (10th Cir. 2017). The Tenth Circuit employs a four-part test to determine if evidence is admissible under 404(b): (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts

is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Rule 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted. *United States v. Smalls*, 752 F.3d 1227, 1237 (10th Cir. 2014); *see also Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).

## ANALYSIS

**I.  The proffered evidence is relevant and offered for a proper purpose and Rule 403 does not bar its admission.**

### A.  Male Trespasser Shooting

The United States seeks to introduce relevant evidence that Defendant previously shot multiple times during an encounter with a male trespasser approximately one month prior to the instant offense. Defendant alleges the male trespasser was also near the same camper trailer when he discharged his firearm and the male ran. Defendant says, "just like I did with this girl" he went "pow, pow, pow." He admits that he took the same actions then as he took in the instant offense. This encounter with a male trespasser demonstrates Defendant's actions are not a mistake or accident, and goes to Defendant's intent, motive and wanton disregard for human life that ultimately killed Jane Doe. Motive and absence of mistake or accident are proper purposes under 404(b), and they are both relevant to prove second degree murder.

Evidence of the male trespasser shooting is not unfairly prejudicial, let alone so unfairly prejudicial as to outweigh its probative value. *See Moran*, 503 F.3d at 1145 ("Unfair prejudice . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."); *see also United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999) ("Rule 403 is an extraordinary remedy and should be used sparingly.") (citations omitted). The probative value is great, considering the ultimate issue at the trial will likely be Defendant's subjective intent in shooting Doe. Rather than Defendant's purported "shooting to

miss," evidence of the previous shootings involving trespassers will establish his motive to kill Jane Doe was motivated by his wanton disregard for human life. Furthermore, evidence of the male trespasser shooting fights bears a low risk that the jury will be so overcome by emotion as to decide this case on an improper basis. The risk of a propensity inference is also slight, given the differences between the shootings – the first shooting with the male trespasser did not result in injury or death. Unlike the instant offense, which resulted in the shooting and death of Jane Doe. Moreover, the United States expects that testimony about the male trespasser shooting will be relatively short in comparison to the trial as a whole, further diminishing any risk of unfair prejudice. *See United States v. McClelland*, 141 F.3d 967, 972 (10th Cir. 1998) ("[T]he testimony was not inflammatory or so extensive in the context of the trial as a whole to be unduly prejudicial."). Accordingly, the United States respectfully requests that the Court rule to admit this evidence.

    **B.**    **Armed Motel Cop**

The United States also seeks to introduce evidence that Defendant, who calls himself "motel cop," explained to SAs Taylor and Cobb that he has carried the same pistol to confrontations with motel residents. Defendant alleges he was scared during the instant offense. Evidence that Defendant has gone out on prior occasions, armed with the same pistol, to confront individuals and make them aware he had a firearm negates Defendant's argument that he was afraid. Defendant admitted to confronting other individuals with his firearm. Defendant's actions and reference to being the "motel cop" do not arise from fear, instead they show Defendant's motive to engage in conduct that is wanton and disregarding of human life. Rather than calling the police, Defendant uses his firearm to confront individuals at his property, trespasser and motel patrons alike. Defendant, as the armed "motel cop," takes the law into his own hands. He

is not so afraid of confrontations and his actions are no mistake or accident. The United States' proffered evidence is relevant. Again, intent, motive and absence of mistake or accident are proper purposes under 404(b).

Although the confrontation with the couple at the motel took place allegedly some twenty years ago, this incident occurred at Defendant's motel and Defendant used the same firearm that killed Jane Doe. The circuit courts have opined on numerous occasions that "[t]here is no absolute rule regarding the number of years that can separate offenses . . ." *United States v. Cuch*, 842 F.2d 1173, 1178 (10th Cir. 1988) (quotations omitted). In *Cuch* the uncharged conduct was more than seven years older than the charged conduct. *Id.* at 1177–78; *see also United States v. Edelmann*, 458 F.3d 791, 811 (8th Cir. 2006) (Defendant's prior convictions, two of which involved filing false currency transaction reports to conceal her identity from IRS were not too remote in time to be admissible under other acts rule, even though they were approximately fifteen years old, given their similarities with charged offenses of mail fraud, wire fraud, and money laundering); *United States v. Engleman*, 648 F.2d 473, 479 (8th Cir. 1981) (no abuse of discretion when district court admitted evidence of crime that defendant committed thirteen years before charged offense). The proffered evidence shows a continuing course of behavior by Defendant. In this case, the time separating the events is not unreasonable.

Moreover, this evidence is also not so unfairly prejudicial as to warrant exclusion under 403. Defendant is placing his intent at issue, therefore evidence contradicting his account is probative. Given the proximity to the murder, the probative value will be great. Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.

*United States v. Archuleta*, 737 F.3d 1287, 1293 (10th Cir. 2013). The United States submits that Defendant's armed encounter with the couple at the motel will not overcome the jury's emotions, since no one was killed. Evidence is not unfairly prejudicial simply because it is damaging to one's case. *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008).

The evidence may cause the jury to view Defendant in a less favorable light, but the evidence is not likely to produce a verdict based on emotions wholly apart from the jury's judgment as to Defendant's guilt or innocence. The probative value of the evidence, which is great, outweighs the danger of unfair prejudice, and any prejudice can be moderated by cautionary instructions from the Court at the time of the admission of the evidence, and if requested, again in the final charge to the jury at the close of the case. *United States v. Record,* 873 F.2d 1363, 1375 (10th Cir. 1989). Moreover, the United States does not oppose a limiting instruction to any of the foregoing evidence.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests this Court allow the above-described evidence to be offered in the prosecution's case-in-chief.

    Respectfully submitted,

    JOHN C. ANDERSON
    United States Attorney

    *Electronically filed on 05/6/2020*
    NOVALINE D. WILSON
    KYLE T. NAYBACK
    Assistant United States Attorneys
    Post Office Box 607
    Albuquerque, New Mexico 87102
    (505) 224-1419

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause a copy of this filing to be sent to counsel for Defendant.

*/s/*
NOVALINE D. WILSON
Assistant United States Attorney