IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 18-3495 JCH |
| ) | |
| **DOUGLAS D. SMITH**, ) | |
| ) | |
| Defendant. ) | |

UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
PRODUCTION OF GRAND JURY TRANSCRIPTS (DOC. 51)

Defendant is requesting disclosure of grand jury transcripts for each witness who testified before the grand jury (Doc. 51 at 2). Defendant states he received grand jury transcripts of E.T. and believes other witnesses were called and requests those transcripts. *Id.* at 2. Defendant argues he has a particularized need and a constitutional right to access grand jury transcripts because grounds may exist to dismiss the Indictment. *Id*. at 3.

In response, the United States asserts that Defendant fails to make the stringent showing of a "particularized need" required to authorize disclosure. Rather, Defendant speculates that other individuals may have been called and that access to the protected materials may reveal improprieties sufficient to dismiss the Indictment. However, Fed. R. Evid. 6(e) and the settled law interpreting it make clear that Defendant's assertions provide no adequate basis for the requested disclosure. Accordingly, the United States respectfully submits that Defendant's motion be denied.

APPLICABLE LAW

In recognition of the Grand Jury's status as an independent institution, courts afford grand jury proceedings a presumption of regularity. See *United States v. Johnson*, 319 U.S. 503, 512-13 (1943). A "'grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process.'" *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991) (quoting *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring)). It is well-established that an indictment valid on its face is not subject to challenge based upon the reliability or competence of the evidence presented to the grand jury. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988); *Costello v. United States*, 350 U.S. 359, 363 (1956) ("If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. . . . An indictment returned by a legally constituted and unbiased grand jury, . . ., if valid on its face, is enough to call for a trial of the charge on the merits."). To be entitled to production, a defendant must show a "particularized need" for the documents that outweighs the public policy of grand jury secrecy. *United States v. Warren*, 747 F.2d 1339, 1347 (10th Cir. 1984).

The prerequisites for disclosure of grand jury materials pursuant to Rule 6(e)(3)(E) are stringent. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979) (outlining standards for determining whether grand jury secrecy should be breached). Specifically, a party seeking grand jury materials must show: (1) the materials are needed to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure is greater than the need for continued secrecy; and (3) the request is structured to cover only material so needed. *In re Grand Jury 95-1*, 118 F.3d 1433, 1437 (10th Cir. 1997). Indeed, relevance alone is insufficient; grand jury

secrecy will not be dissolved absent a compelling necessity for the materials. *Id*. Instead, a defendant must point to something specific in the record that might suggest that "the prosecution engaged in improper conduct before the grand jury." *United States v. Edelson*, 581 F.2d 1290, 1291 (7th Cir. 1978).

Given Defendants' allegations, it is also significant to note the Supreme Court's decision in *United States v. Williams*, 504 U.S. 36 (1992), regarding the district court's exercise of supervisory power to dismiss indictments based on the government's conduct in presenting evidence to the grand jury. As the *Williams* Court stated:

> It would make little sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation. ***A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was "incomplete" or "misleading."*** ... Review of facially valid indictments on such grounds would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it.

*Id.* at 54 (emphasis added; internal quotations and citations omitted).

Holding firm to this admonition, the Tenth Circuit has explained that targets of grand jury investigations "have no ability to correct inadvertent or deliberate distortions during the grand jury's fact-finding process." *United States v. Jones*, 160 F.3d 641, 646 (10th Cir. 1998).

## ANALYSIS

Defendant asks for grand jury transcripts to attack the indictment, but he has failed to make any showing of a "particularized need." Instead, Defendant's motion proposes the "fishing expedition" that settled law warns against. "Particularized need is most often established when there is a need 'to impeach a witness, refresh his recollection, [or] test his credibility.'" *United States ex rel. Stone v. Rockwell Int'l Corp.*, 173 F.3d 757, 759 (10th Cir. 1999) (quoting *Lynde v.*

3

*Rienks*, 922 F.2d 1448, 1454 (10th Cir. 1991)). In *United States v. Edmonson,* 962 F. 2d 1535, 1539 (10th Cir. 1992) the court wrote, "This presumption of regularity given to all grand jury proceedings is a difficult burden to overcome and requires very significant misconduct on the part of the prosecutor or other government agents." In order to obtain discovery of matters occurring before grand jury, a criminal defendant must overcome this presumption of regularity. Defendant cannot make this requisite showing.

Defendant argues the "government's case rests on no evidence of malice aforethought." Doc. 51 at 4. Defendant incorrectly represents the evidence is virtually undisputed. *Id*. at 5. Clearly, Defendant's defense at trial is that he shot his firearm to scare people. *Id*. Based on this reasoning, Defendant is contemporaneously challenging the sufficiency of the indictment in his Motion to Dismiss under 12(b) for Insufficient Evidence. Doc. 50. Defendant asks this Court to ignore a bedrock principle of criminal law: that a district court may not weigh the sufficiency of the evidence presented to the grand jury to support a facially valid indictment. *See Williams,* 504 U.S. at 36 (the federal court's supervisory powers over grand juries do not include the power to dismiss an otherwise valid indictment in the absence of actual prejudice to a defendant); *see also United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) ("Courts should . . . avoid considering evidence outside the indictment when testing the indictment's legal sufficiency.") Rather, in the pretrial phase of a case, a defendant may only object to deficiencies apparent from the face of the indictment. *Id*. (quoting *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true.") Therefore, the question of what evidence the grand jury heard is not applicable at this stage of Defendant's case and Defendant's desire to know such evidence in the absence of a legitimate legal need for it does not justify disclosure.

Moreover, Defendant's assertion that he requires disclosure to determine whether his self-serving version was presented to the grand jury does not constitute a particularized need or government misconduct. The United States was not obligated to present to the grand jury evidence that Defendant would have liked, and his speculative claims that the United States secured the indictment through mischaracterizations are baseless.

Defendant cannot show a particularized need based on how the evidence has been discussed by the government. Defendant accuses the United States of "severe mischaracterization" of evidence if Defendant's conduct was summarized as "shooting in the same general direction of or "shooting towards" Jane Doe. Doc. 51 at 13. Moreover, Defendant takes issue with the description of "shooting at" or that he "shot at" other trespassers in the past. *Id.* This argument conveniently disregards portions of Defendant's own statements made to law enforcement. The overarching problem with Defendant's argument is that he mistakes the ultimate question of fact in every criminal case for a question of law. When a grand jury returns an indictment in a federal criminal case and the defendant denies the charges, the case proceeds to a jury. In an effort to short-circuit that process, Defendant is asking this Court to believe his account instead of the United States' evidence.

As the United States submitted in its Response to Opposition to Defendant's Motion to Dismiss Under 12(b) for Insufficient Evidence (Doc. 61), the evidence is in dispute. Defendant independently drew two separate diagrams in separate interviews with Detective Byron Abeyta (May 5, 2018) and FBI Special Agents Travis Taylor and Michelle Cobb (dated May 7, 2018), which are attached to the United States' Response as Government's Exhibit 1 (Doc. 61-1). In both diagrams, Defendant drew the layout of the Western Winds Motel area around the office, Defendant's residence, and his yard. Again, in both diagrams, Defendant drew the camper trailer

and depicted the path of Jane Doe's flight after he fired the first shot. Defendant drew arrows in both diagrams illustrating the path Jane Doe ran after he started shooting. Defendant then drew out multiple lines depicting where he shot starting in the area of the camper trailer. These lines incrementally follow the path Jane Doe ran. Given Defendant's drawings, which depict where he admits that he discharged each bullet, the inference that Defendant is "shooting in the same general direction of" or "shooting towards" Jane Doe is not unreasonable. Moreover, during his interview with Detective Abeyta, Defendant explained during the prior month that he saw a male trespasser near the same camper trailer. Defendant stated that during this encounter with the male trespasser, he discharged his firearm multiple times. Defendant stated of the male trespasser, "he took off running, and I went pow, pow, pow again, just like I did with this girl." Doc 66, Government's Exhibit 2, at 13:8-9. In both instances as trespassers ran, Defendant responded by continuing to discharge his firearm multiple times. Against this backdrop of Defendant's bullet trajectory drawing involving Jane Doe, once again, it is not unreasonable to articulate Defendant's conduct as "shooting at" or that he "shot at" the male trespasser. Defendant stated the male trespasser ran, then he shot – "pow, pow, pow." As both individuals ran away from him, Defendant responds to their flight by shooting multiple times. As such, Defendant's assertions that such descriptions are "severe mischaracterizations" is unwarranted and do not rise to the level of a particularized need for disclosure.

      Moreover, Defendant's allegations of severe mischaracterizations do not constitute the kind of government misconduct warranting the extraordinary remedy of a dismissal. *Bank of Nova Scotia*, 487 U.S. at 260-61 (holding that alleged misleading and inaccurate summary testimony by investigative agents before the grand jury fall short of requiring dismissal). A defendant who claims false evidence was presented to the grand jury instead must establish by

clear and convincing evidence that presentation of the false evidence was a violation of his due process rights that "substantially influenced the grand jury's decision to indict," or created "grave doubt that the decision to indict was free from the substantial influence of such violation [.]" *United States v. Ramos-Carrillo*, 2013 U.S. App. LEXIS 3384, at *2 (10th Cir. Feb. 19, 2013) quoting *Bank of Nova Scotia*, 487 U.S. at 256.

Next, Defendant's request for grand jury transcripts for other additional witnesses who may or may not have testified is a speculative fishing expedition. Because grand jury proceedings are afforded a presumption of regularity, *see R. Enters., Inc.*, 498 U.S. at 301, without some evidence showing a particularized need, the Court should not breach the grand jury's secrecy for Defendant, *see United States v. Welch*, 201 F.R.D, 521, 523-24 (D. Utah 2001) (denying motion for disclosure of instructions to grand jury, or alternatively, for *in camera* review because indictment was valid on its face and defendant's motion was speculative and did not show particularized need). Defendant's broadly based requests for disclosure based on his Sixth Amendment right to effective cross-examination is merely an impermissible fishing expedition. *See United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) "[t]he constitution does not grant criminal defendants the right to embark on a broad or blind fishing expedition among documents possessed by the Government …" (internal quotation and citation omitted); *see also Warren*, 747 F.2d at 1347 (a defendant may not meet the "particularized need" requirement by attempting to engage in a fishing expedition for information that the defendant hopes will be useful to him). *See United States v. Kim*, 577 F.2d 473, 478 (9th Cir. 1978).

The United States is cognizant of its obligations under the Jencks Act, which requires production of trial witnesses' prior statements that relate to the subject matter of those witnesses' trial testimony in the government's possession. *See* 18 U.S.C. § 3500(b). The United States'

7

Jencks Act duty to disclose, however, does not trigger until after that witness testifies at trial. *See* 18 U.S.C. § 3500(b).15. Thus, Defendant's pretrial request in this motion is nothing more than a request for early discovery. Accordingly, the Court should deny Defendant's request for grand jury transcripts. *In re Grand Jury 95-1*, 118 F.3d at 1437 ("Relevance alone is not sufficient; secrecy will not be broken absent a compelling necessity for the materials.").

## CONCLUSION

The Court should not conduct a mini-trial on the grand jury's probable cause determination based on Defendant's speculation about what the grand jury heard before returning the indictment. Defendant can put the United States to its proof at trial. But a facially valid indictment supported by recorded inculpatory statements shuts the door on the relief Defendant ultimately seeks. There is no basis for dismissing the indictment, and there is no justification for granting Defendant's discovery of grand jury material.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically filed on 05/11/2020*
NOVALINE D. WILSON
KYLE T. NAYBACK
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 224-1419

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause a copy of this filing to be sent to counsel for Defendant.

/s/
NOVALINE D. WILSON
Assistant United States Attorney