IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 18-3495 JCH |
| | ) | |
| **DOUGLAS D. SMITH**, | ) | |
| | ) | |
| Defendant. | ) | |

UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS (DOC. 49)

The United States hereby responds in opposition to Defendant's Motion to Suppress

(Doc. 49). Defendant argues the affidavit for the warrant offers no support for its proposition that

there would still be evidence of a shooting that took place more than one year prior. *Id.* at 8. The

United States asserts that based on the nature of the crime and the enduring, fixed nature of the

structures and objects at the crime scene, the search warrant is supported by sufficient probable

cause. Moreover, the agent relied in good faith on the determination of the United States

Magistrate Judge's independent determination of probable cause.

As an initial consideration, in challenging the sufficiency of probable cause in the United

States' search warrant, Defendant asks the Court to hold a hearing. Defendant fails to mention

the significant requirements necessary to trigger the necessity for a *Franks* hearing. In *Franks v.*

*Delaware*, 438 U.S. 154, 155-56 (1978), the Supreme Court held that, in limited circumstances, a

defendant is entitled to an evidentiary hearing to determine whether a search warrant was issued

in reliance on a deliberately or recklessly false affidavit. To warrant a *Franks* hearing a

defendant must "make[] a substantial showing that the [search warrant] affidavit contains intentional or reckless false statements and [that] the affidavit, [if] purged of its falsities, would not be sufficient to support a finding of probable cause." *United States v. Kennedy,* 131 F.3d 1371, 1376 (10th Cir. 1997) (*citing Franks*, 438 U.S. at 155-56, *cert. denied*, 525 U.S. 863 (1998)). "[T]he standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods." *Id.* (quotation marks omitted). Defendant makes no such claim in his motion to suppress. As such, Defendant's request for a hearing to resolve this motion should be denied. Unless a *Franks* hearing is warranted, the "four corners doctrine" limits a reviewing court to review only those materials submitted to the issuing judge. *See Hackney v. McLaughlin*, 895 F.2d 1298, 1300 (10th Cir. 1990).

The United States relies on the four corners doctrine. Defendant's motion is most notable for its almost total lack of discussion about the information contained within the four corners of the search warrant. Instead, Defendant spends pages discussing what is not in the affidavit, trying to draw the Court's attention away from the four corners of the documents themselves – the only relevant analysis.

As detailed below, and found repeatedly by an officer of the court, the affidavit in support of the search warrant fully established probable cause to examine the fixed structures including the configuration of the buildings, the location of the yard area near Defendant's porch, the sheds, the camper trailer, and the trees and bushes near these structures. Moreover, even if there were some issue with the warrant, the agents were fully entitled to rely in good faith on the warrant's validity.

BACKGROUND

On August 15, 2019, SA Taylor sought a warrant to take photographs, spherical photographs, conduct 3D scanning, videography, and trajectory analysis of the property at 825 North Riverside Drive, in Espanola, New Mexico. *See* Government's Exhibit 1. The affidavit submitted that on May 5, 2018, Espanola Police Department (EPD) officers responded to the Western Winds Motel, 825 North Riverside Drive, Espanola, New Mexico. *Id*. at 7. Defendant, the motel manager, shot and killed an unknown female with a .22LR handgun after he allegedly observed her attempting to break into a camper trailer, which is located at the property. *Id*. Defendant was *Mirandized* and interviewed by EPD Detective Byron Abeyta (*id*. at 8) and later FBI Special Agents Travis Taylor and Michelle Cobb (*id*. at 9). Defendant discussed motion sensors set up in his yard that alerted him to movement outside his home. *Id*. at 8. Defendant responded to multiple alerts that night by going outside to check. *Id*. Defendant also took his firearm and additional ammunition when he conducted his outside checks. *Id*.

Defendant was in bed when the alarm triggered once again for the third time. *Id*. Defendant stepped out of his home, onto the porch, and observed the shadow of a person attempting to hide near a camper trailer, also on his property, and the person was staring at him. *Id*. The shadow began to run to the left after the first shot, and Defendant continued to shoot in the same general direction the person ran. *Id*. Defendant attempted to reload before walking around the property in counterclockwise manner. *Id*. Defendant saw Jane Doe's body. *Id*. The victim sustained one fatal gunshot to her upper left temple with no exit wound. *Id.* at 9.

In his interview with FBI agents, Defendant reiterated what he told Detective Abeyta and additionally explained that he had previously fired warning shots at trespassers on his property. *Id*. Defendant drew out for the agents a diagram of his property explaining where he stood in

proximity to where he saw the victim, and where he started shooting. *Id*. The victim did not make any movement towards him, nor did he see anything in her hands. *Id*. No weapons or burglary tools were located near Jane Doe's body. *Id*.

The search warrant principally involved imaging, including photographing, spherical photographing, 3D scanning, videography, and trajectory analysis of the crime scene. No items were taken from Defendant's property. Photographs and 3D scans were made. *Id.* at 15. Subsequent trajectory analysis conducted by FBI Special Agent Chavez (SA Chavez) is based primarily on the imaging taken on August 22, 2019. *See* SA Chavez' report and graphic attached as Exhibit to Notice (Doc. 54-4). Additionally, scans of the exterior property assisted in making a 3D model of the crime scene. *See* Government's Exhibit 2.

<u>APPLICABLE LAW</u>

The Supreme Court in *Gates* adopted a "totality of the circumstances" test: "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160 (1949)). To find probable cause, the court makes a "practical, common-sense decision whether," based on the totality of the circumstances, "there is a *fair probability* that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238(emphasis added). Probable cause requires a nexus between the place to be searched and the items to be seized. The court may draw "reasonable inferences" from the material provided in the warrant application to determine whether the required nexus exists. *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999). Probable cause to search cannot be

based on stale information that no longer suggests the items sought will be found in the place to be searched. *United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir. 2004).

> A reviewing court should accord great deference to a magistrate's determination of probable cause; its duty is "simply to ensure that the magistrate had a substantial basis for ... conclud[ing] that probable cause existed." *Gates,* 462 U.S. at 236, 238–39 (quotations omitted). This deference is appropriate to further the Fourth Amendment's strong preference for warrants. *Massachusetts v. Upton,* 466 U.S. 727, 733 (1984); *see also United States v. Ventresca,* 380 U.S. 102, 105–06, (1965) ("An evaluation of the constitutionality of a search warrant should begin with the rule that the informed and deliberate determinations of magistrates empowered to issue warrants ... are to be preferred over the hurried action of office[r]s ....") (quotations omitted). Because of this strong preference for warrants, "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *Ventresca,* 380 U.S. at 106.

*United States v. Reed*, 195 F. App'x 815, 822 (10th Cir. 2006).

Even if a search warrant is subsequently invalidated, evidence obtained from the search is still admissible if officers conducted the search in good faith and in reasonable reliance on the warrant. *United States v. Leon*, 468 U.S. 897, 921-23 (1984).

<u>ANALYSIS</u>

## I.    <u>There was a sufficient nexus between the items to be searched and Defendant's home.</u>

Defendant improperly asserts "there is no nexus between the shooting on May 5, 2018 and a search of the scene of the incident over a year later." Doc. 49 at 11. To find the required nexus, the court may draw "reasonable inferences" from the material in the search warrant affidavit and rely on the opinion of law enforcement officers as to where contraband or other evidence is likely to be kept. *United States v. Bigelow*, 562 F.3d 1272, 1279-80 (10th Cir. 2009). Moreover, a law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal activity will be found in the place to be searched, is entitled to consideration

in [the] determination of whether probable cause existed at the time a warrant is issued." *Mathis*, 357 F.3d at 1205.

The search warrant for Defendant's property was in fact grounded in probable cause. The clear and reasonable inference is that Defendant discharged the firearm that killed Jane Doe while on the exterior of his property. There is a clear relationship between the items sought in relation to the items to be searched, that being Defendant's criminal activity and the exterior layout of Defendant's property, which is the crime scene. Defendant explains that he stood on the porch outside his house and saw someone staring at him from the area of the camper trailer near bushes. The shadow began to run away to the left after Defendant's first shot. Defendant then continued to shoot in the same general direction the person ran. Defendant attempted to reload his firearm before walking clockwise on the property to find Jane Doe's body. Jane Doe was shot in her left temple, which is consistent with her attempt to flee Defendant's yard. Clearly it is reasonable to infer that there is a nexus between the homicide and the layout of the crime scene even after the passage of time because the layout of the Defendant's exterior property is enduring in nature. The United States examines Defendant's staleness arguments below, but asserts the information in the affidavit sufficiently establishes a nexus between the shooting and search of the crime scene. Based on the magistrate judge's practical, common-sense decision, he determined that based on the totality of the circumstances, there is a *fair probability* that evidence of the homicide would be found at the crime scene. Defendant discharged his firearm multiple times, defendant referenced the layout of his exterior property in his interviews to law enforcement, and Defendant drew out for agents a diagram of his exterior property outlining where he was and where Jane Doe was when he began shooting.

II.    **The information provided in the affidavit was not stale, nor were the items to be searched stale because the search warrant sought evidence likely to exist even after the passage of time.**

Clearly, "[p]robable cause for a search warrant cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Harris*, 369 F.3d 1157, 1165 (10th Cir. 2004) (internal quotation marks omitted). "The determination of timeliness, however, does not depend on simply the number of days that have elapsed between the facts relied on and the issuance of the warrant." *Id.* (internal quotation marks omitted). "Instead, whether the information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id.* (internal quotation marks and alteration omitted).

In challenging the warrant, Defendant argues the underlying information in the affidavit is too old to be reliable and the information does not provide sufficient probable cause to believe that the items sought in the search warrant were in the place to be searched. In response, the United States asserts there was sufficient probable cause based on the nature of crime – a homicide that took place on Defendant's property as described above, and the nature of the items sought, which were fixed, enduring objects.

Defendant's assertion of staleness is based on the possibility that Defendant or others could have moved items, weeded, landscaped, or trimmed during the intervening fifteen months between the crime and the issuance of the warrant. First, this same argument could have been made within the first several hours after Defendant returned home to his residence. Second, Defendant's assertion that possible subsequent summertime landscaping diminishes probable cause is not convincing. The affidavit sufficiently explained that the evidence sought was still at the place to be searched. Weeding, trimming, and summer landscaping does not affect the fixed

nature of the layout of the structures or the configuration of trees and bushes. These items are enduring -- fixed physical structures including the location of the house, the sheds, the trailer camper, the configuration of the yard, and generally the proximity of the trees and bushes.

The passage of fifteen months is not fatal to the magistrate judge's determination of probable cause based on the enduring nature of the evidence sought. The Tenth Circuit considers timeliness of information as one of many factors to consider when assessing whether a search is supported by reasonable suspicion or probable cause. *See Cortez-Galavin*, 495 F.3d 1203, 1209 (10th Cir. 2007); *United States v. Rahn*, 511 F.2d 290 (10th Cir. 1975) (magistrate could reasonably have concluded that defendant still had the guns after making statements that he would keep the firearms so they could appreciate in value, even though nearly two years had passed since anyone had actually seen them in his possession); *see also United States v. Freeman,* 685 F.2d 942 (The fact that items sought were bank records and identification papers that are not ordinarily destroyed or moved about from one place to another controverted potential staleness problems); *see also, e.g., Andresen v. Maryland,* 427 U.S. 463, 478–79 n.9 (1976) (business records); *United States v. Diecidue,* 603 F.2d 535, 560 (5th Cir. 1979) (bullet fired into wall). Courts have determined that timeliness must be determined in the light of the particular circumstances of each case. *Id.*(citing *United States v. Prout*, 526 F.2d 380, 386 n.5 (5th Cir.), cert. denied, 429 U.S. 840, 97 (1976); *United States v. Guinn*, 454 F.2d 29, 36 (5th Cir.), cert. denied, 407 U.S. 911 (1972)). In *Diecidue*, the Court rejected a staleness argument, finding that "[a]lthough the information regarding the projectiles was four months old, there is considerable likelihood that the information was not stale. The floors and walls of a house are relatively permanent fixtures and would not likely be subject to removal over the period of four months." *Diecidue*, 603 F.2d at 560. The longest period of sanctioned delay affirmed in a published case

may be *United States v. Carroll,* 750 F.3d 700 (7th Cir. 2014), where the Seventh Circuit found

that five years was not stale.

The issue is not just the passage of time; it is also that the evidence of the type that would

likely be in the place to be searched would still also exist. Additionally, "[t]here is no bright-line

test for determining when information is stale.... Time factors must be examined in the context of

a specific case and the nature of the crime under investigation." *United States v. Summage,* 481

F.3d 1075, 1078 (8th Cir. 2007) (quoting *United States v. Koelling,* 992 F.2d 817, 822 (8th Cir.

1993)) (brackets added; ellipsis in *Summage*). "[T]he lapse of time is least important ... when the

[evidence of criminal activity] is not likely to be destroyed or dissipated." *United States v.*

*Gleich,* 397 F.3d 608, 613 (8th Cir. 2005) (quoting *United States v. Horn,* 187 F.3d 781, 786 (8th

Cir. 1999) (citing, in turn, *Koelling,* 992 F.2d at 822–23)). The evidence sought in this case is not

the type of evidence that rapidly dissipates or degrades and it was reasonable for the magistrate

judge to infer that the layout of Defendant's property would not be subject to removal, even after

fifteen months. As such, the information in the affidavit is not stale.

### III.    The agent was entitled to rely in good faith on the warrant issued by the magistrate judge as established by *Leon*.

Even if there were a lack of probable cause to support a search warrant, a situation that

does not exist here, a reviewing court must refuse the suppression remedy if the officers

executing the warrant relied in good faith upon the magistrate's authorization. *Leon*, 468 U.S. at

922. There are four circumstances in which an officer cannot be found to have relied on a

warrant in good faith: (1) when the issuing magistrate was misled by an affidavit containing false

information or information that the affiant should have known was false but for his reckless

disregard for the truth; (2) when the judicial magistrate wholly abandoned his judicial role; (3)

9

when the affidavit supporting a warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer could not reasonably believe it was valid. *Id.* at 923.

Defendant argues that the good-faith exception is inapplicable because "[a]n officer does not act in good faith when he relies on an isolated criminal event occurring over a year prior as justification for the warrant." Doc. 49 at 13. Defendant then rehashes his staleness arguments and asserts it was "unreasonable for law enforcement to presume the warrant was valid" and argues for suppression. *Id.* at 14. Defendant's circuitous argument attempts to fall in to one of the carve-outs delineated in *Leon* – namely, where the affidavit "lacked indicia of probable cause."

Defendant's argument fails for at least two reasons. First, the Tenth Circuit has held that good faith can be established so long as a "minimal nexus" exists between the place to be searched and the suspected criminal activity. *United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005). As previously discussed, the affidavit, at the very least, supported a minimal nexus between Defendant, the things being searched for, and the place being searched. Specifically, Defendant discharged his firearm multiple times from his porch through his property, killing Jane Doe. The affidavit states that further spherical photos, videos, and scan mapping and trajectory analysis of the property will provide further evidence of the homicide.

Second, the affidavit at issue, even assuming arguendo that it did not support probable cause, which it does, is not a "bare bones" affidavit of the sort disapproved of in *Leon*. *See United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006) ("A bare bones affidavit is one that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." (quotation omitted)). The affidavit provided an account of the underlying factual circumstances regarding veracity,

reliability, and basis for knowledge. None of the four disqualifying *Leon* circumstances exist in this case and a reasonable officer would not have known that this warrant was lacking.

**IV.    Since 3D scans and photographs of Defendant's property were made, no items were seized, which decreases the degree of intrusion.**

Moreover, the search warrant principally sought imaging of the crime scene, which is primarily located on the exterior of Defendant's property. No items were taken from Defendant's property, only 3D scans and photographs were made. Government's Exhibit 1 at 15. Arguably, the degree of intrusion is low. *See Bills v. Aseltine,* 958 F.2d 697, 707 (6th Cir. 1992) (finding that "the recording of visual images of a scene by means of photography does not amount to a seizure because it does not 'meaningfully interfere' with any possessory interest"); *United States v. Mancari*, 463 F.3d 590, 596 (7th Cir. 2006) ("[W]hen officers who are lawfully on the premises pursuant to a valid search warrant merely record what they observe there that is in plain view, they do not invade legally protected privacy or any other legal interest."). *United States v. Speece*, Nos. 92-3077, 92-3078, 1993 WL 17105 at *2 (10th Cir. Jan. 26, 1993) ("Since the officers were lawfully on the premises, their use of photographs of items in plain view was also lawful.") (unpublished); *United States v. Harb*, No. 2:07-CR-426, 2009 WL 910777 at *2–3, *7–8 (D. Utah Mar. 30, 2009) (holding that agents could lawfully photograph every room during the execution of a search warrant because photographing was not a Fourth Amendment seizure).

Here, law enforcement took precautions and obtained a search warrant for a "search" that was not intended for the seizure of property. Given these facts, it certainly make no sense for the exclusionary rule to be applied to exclude evidence where the degree of intrusion was so minimal and where there was no police misconduct. *See Herring v. United States*, 555 U.S. 135 (2009) (extent to which exclusionary rule is justified varies with the culpability of law

enforcement conduct). Photographs and 3D scans were taken of primarily the exterior of

Defendant's property. This is not the situation where agents used a lot of force to seize items. As

such, this evidence should not be excluded.

<u>CONCLUSION</u>

WHEREFORE, the United States moves the Court to deny Defendant's motion to

suppress based on the pleadings and without a hearing because the search warrant contains

probable cause and, in the alternative, the good faith exception applies.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically filed on 05/11/20*
NOVALINE D. WILSON
KYLE T. NAYBACK
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 224-1419

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court using
the CM/ECF system, which will cause a copy of
this filing to be sent to counsel for Defendant.

*/s/*_____
NOVALINE D. WILSON
Assistant United States Attorney