IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. CR 1:18-03495-001 JCH |
| | ) | |
| vs. | ) | |
| | ) | |
| DOUGLAS D. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**Mr. Smith's reply to the government's response
to motion for production of grand jury transcripts (Doc. 69)**

Douglas Smith, by and through undersigned counsel Aric G. Elsenheimer and Amanda R. Lavin, replies to the government's response (Doc. 69) to Mr. Smith's motion for the production of grand jury transcripts (Doc. 51). Mr. Smith requests a hearing on this motion to address and clarify issues raised in the parties briefing on this motion. In support, Mr. Smith states:

Mr. Smith filed a motion for the production of grand jury transcripts (Doc. 51) based largely on the government's repeated misrepresentation of

Mr. Smith's statements. The government's response to this motion overlooks its own repeated misstatements of the evidence, characterizes this request as "baseless" and seeks to reframe the issue as one based on a presumption of grand jury regularity. The government's response does not appear to dispute, in any significant way, the fundamental contention that the government presented misleading evidence to the grand jury.

The government's response also provides the best argument in favor of disclosing the grand jury transcripts. According to the government, Mr. Smith drew a diagram that "depicts where he admits that he discharged each bullet" and permits as reasonable the inference that Mr. Smith was "shooting in the same general direction of" or "shooting towards" Jane Doe. While the defense disputes the evidentiary support of such an inference, its presentation to the grand jury would not be objectionable. But the defense is not objecting, for purposes of this motion, to an "inference" that Mr. Smith was "shooting toward" or "shooting in the same general direction of" Jane Doe. Rather, the defense objects to the mischaracterization of Mr. Smith's statements that he was doing either of

these things. Mr. Smith never once said "shooting toward" or "shooting in the general direction of" Jane Doe. But that is precisely how the government mischaracterized his statements on three separate occasions. The fact that someone could draw an inference from evidence, however speculative, does not change the fact that Mr. Smith never said what the government claims he said. If such a misstatement was presented to the grand jury for consideration as evidence, that would irreparably deprive Mr. Smith of his right to an impartial grand jury under the Fifth Amendment to the Constitution.

    The government's argument runs into two additional problems. First, the government is correct that Mr. Smith drew a diagram of the incident. But Mr. Smith made very clear, from the first moment that he spoke with law enforcement, that he never aimed at or shot at the intruder, that he "shot to miss" and only fired a shot once he believed the intruder had left his property. The government's presentation of Mr. Smith's diagram, without his statements explaining that diagram, would itself constitute the

misrepresentation of evidence to the grand jury. The government's response appears to imply that that is precisely what they did.

The second problem with the government's argument is that they appear to concede that they presented to the grand jury the same misleading testimony that they presented at the preliminary hearing. It is worth reviewing the transcript of the preliminary hearing. At the preliminary hearing the AUSA and testifying agent had the following exchange:

> AUSA   And if you could just describe in a little more detail for the court uhm how the defendant explained firing these shots at the victim?
>
> TAYLOR   So the defendant made statements to the detective and I uh on Monday and that he uh came out to his porch the third time after hearing noise that night. It was two other times, didn't see anything. Third time he came out, he saw a shadowy figure by his camper trailer, or by his uh deceased mother's camper trailer that is adjacent to the garden and the porch.  The shadowy figure crouched down.  At that point, he stated he feared that uh he was in danger.  When asked if that shadow figure made any movements toward him or had anything in their hand, he stated that he did not see anything nor did they move towards him so he fired a shot to the left of the camper trailer.  *After the first shot, the*

> *shadow figure moved in that direction and he fired, continued to fire shots in that same general direction.*
>
> AUSA   The subsequent shots that were fired were in the direction in which the victim was moving?
>
> TAYLOR   Correct.

Agent Taylor says that "after the first shot, the shadow figure moved in the direction and he fired, continued to fire shots in that same general direction." This statement is inaccurate, misleading, and left the fact finder with the impression that Mr. Smith admitted to intentionally and knowingly firing shots at the intruder as the intruder was running past him. Mr. Smith never said this to the FBI. Instead, he and the FBI agent had the following exchange:

> Taylor:   What was the – person doing?
>
> Mr. Smith:   Running. I thought they --- I thought whoever it was had already run off so I was just shooting to make sure they were scared."

Later, Agent Taylor and Mr. Smith have the following exchange:

> Taylor:   And again, I don't know what it looks like so I'm trying to picture it in my mind. It's kind of hard. But—so you shot behind, and then you saw the shadow run away from your [INAUDIBLE]?
>
> Mr. Smith:   Run away—run away going out toward the street.
>
> Cobb:   Out toward the street? So they were fleeing?

5

> Mr. Smith: They were fleeing.
>
> Cobb: They were fleeing, right? And then when you went to shoot the warning shots—
>
> Mr. Smith: Well, at that time, I –
>
> FBI SA Cobb: -- [INAUDIBLE].
>
> Mr. Smith: -- I couldn't – I couldn't see where the person was so I figured whoever it was was already out of the area, so I was just shooting to make sure they were as afraid of being there as I was.

Mr. Smith is not seeking to make the argument that the government is under a duty to present self-defense to the grand jury or to otherwise present the full scope of a defendant's statements, even if those statements are exculpatory. But the government's failure in this case does not appear to have merely omitted matters from the grand jury's assessment. Rather, there is a strong likelihood that the government misrepresented the nature of Mr. Smith's statements.

Mr. Smith has an Fifth Amendment right to an impartial grand jury. Given the government's repeated mischaracterization of Mr. Smith's statements, there is a strong likelihood that the government mischaracterized Mr. Smith's statements to that grand jury to infuse his

statements with something akin to the reckless disregard the government believed it needed to make a case for second degree murder. The government's response appears to concede this underlying premise.

It is also important to clarify that Mr. Smith is not, at this time, seeking dismissal of the indictment for the government's mischaracterization of the evidence. Rather, Mr. Smith is seeking to have the grand jury transcripts unsealed so that he can review those transcripts to ensure that his Fifth Amendment right to grand jury presentment and to ascertain whether any mischaracterization of evidence prejudiced him and affected his right to fundamental fairness in the criminal process. *See United States v. Cooper*, 396 F.Supp.3d 992, 994 (D. Kan. 2019).

Respectfully Submitted,

**FEDERAL PUBLIC DEFENDER**
111 Lomas Blvd., NW Ste. 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494
aric_elsenheimer@fd.org
amanda_lavin@fd.org

*Electronically filed July 29, 2020*
/s/ AMANDA R. LAVIN
/s/ ARIC G. ELSENHEIMER
Assistant Federal Public Defenders
Counsel for Defendant Douglas Smith

8