IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. CR 1:18-03495-001 JCH |
| | ) | |
| vs. | ) | |
| | ) | |
| DOUGLAS D. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**Mr. Smith's response to the**
**government's motion to prohibit self-defense (Doc. 68)**

Mr. Douglas Smith, by and through undersigned counsel, Assistant Federal Public Defenders Aric G. Elsenheimer and Amanda R. Lavin, submits this response to the government's motion in limine to prohibit Mr. Smith from raising self-defense at trial. (Doc. 68). This effort is nothing more than a blanket attempt to deprive Mr. Smith of his right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment to the United States Constitution.

The government's motion is not entirely clear as to the remedy they are seeking, but it appears that, at its heart, the government is asking that Mr. Smith "should be required to establish a prima facie claim of an affirmative defense before being permitted to inject otherwise inadmissible evidence into trial."

It is unclear what authority the government has for this requirement. It appears the government relies on Rule 104 in support of a pretrial hearing on evidentiary matters. But the government has not shown how this shifts the burden to the defense to establish a prima facie case for an affirmative defense, nor has the government articulated why "justice so requires" a pretrial hearing. It is also unclear how a defendant would make a "prima facie claim of an affirmative defense." Doing so would shift the burden of proof from the government to the defense and would deprive the defense of the Sixth Amendment right to a trial by jury. The government's motion is a vague, unclear, and unwieldly attempt to impose a requirement on the defense that is not, in any way, a part of the Sixth Amendment's right to a jury trial. Nothing reflects this effort more than the

government's observation that even if Mr. Smith "was justified in using force against Jane Doe, the force was unreasonable."

Not only is the government's effort to require from the defense a prima facie claim of an affirmative defense a deprivation of Mr. Smith's right to a jury trial, such an argument would also deprive Mr. Smith of his right to the due process of law. The right to assert an affirmative defense such as self-defense, defense of property, or defense of habitation, is an aspect of due process and there is no requirement that Mr. Smith make a prima facie proffer of evidence.

The very nature of the Sixth Amendment right to a jury trial is to place the jury as the sole arbiters of questions of fact. Whether Mr. Smith's actions were based on his subjective perception of a threat and whether his actions were reasonable is entirely a question for the jury. Certainly, the Court has a role to play in this decision. Should someone seek a jury instruction for self-defense or defense of habitation where there is absolutely no factual support for that instruction, it is the province of the Court to serve a gatekeeping function and prohibit a self-defense

instruction. But we are not at that point in these proceedings nor is this the case where there is no factual support for self-defense or defense of habitation. *See State v. Cardenas*, 380 P.3d 866, 871 (Ct. App. NM 2016) ("If the first subjective element is met, and the choice to use deadly force is reasonable, the elements of the defense are met, and the killing is legally justified. The existence of any evidence to support the giving of a defense of habitation instruction, however, slight, provides an adequate basis for giving the instruction."). Whether Mr. Smith subjectively perceived a threat to his person or property and whether his actions were a reasonable response to an intruder on his property under the cover of darkness is a question for the jury. *See State v. Couch*, 52 N.M. 127 (1946) ("[i]f one is committing acts in or about a dwelling, which reasonably and in good faith are believed to manifest a felonious intent, a man having the right of defense as to such dwelling may resort to force to repel the attack or prevent the frlony [sic], and his act may be justified, under the law of self-defense, although it might afterwards turn out that no felony was, in fact,

4

contemplated, but the only design was to frighten the persons in such dwelling." (quoting *Foster v. Shepherd*, 258 Ill. 164)).

As a tangential matter, and one not directly related to the question of whether or how the Court should instruct the jury, it is worth pointing out that the government's argument that M.G. was a mere "trespasser" is incorrect. When Mr. Smith stepped out on his back porch, the intruder on his property was attempting to break into a trailer, a fourth degree felony under New Mexico law.

The government engages in another creative reconstruction of the past by saying that the intruder was "hiding in the bushes." It's not clear how this helps the government's case. Those who "hide in bushes" under the cover of darkness after an attempted burglary are generally not acting with innocent intent. Regardless of the government's efforts to paint M.G.'s actions as those of one on an innocent midnight frolic, nothing can prevent the jury from being the final factfinder as to Mr. Smith's subjective perception of a threat and whether his actions in response to that threat were reasonable. *See State v. Couch*, 52 N.M. 127 (1946) (finding an

instruction for defense of habitation appropriate where a defendant fired shots at a car after the car had driven by his house, thrown rocks at it, and was driving away when he fired the shots).

Lastly, the government also seeks to take issue with Mr. Smith's inability to see whether or not the intruder had a weapon. It is worth clarifying exactly what Mr. Smith said. As Mr. Smith told Detective Abeyta that "I was scared shitless because that person was eyeballing me, and I thought, oh, shit. They're going to start blasting away at me, so I thought I better scare them off." *See Couch*, 52 N.M. at 49 ("When one's home is attacked in the middle of a dark night by persons riding in an automobile, the householder, being unable to determine what weapons the assailants have, is not obliged to retreat but may pursue his adversaries till he finds himself out of danger."); *Beard v. United States*, 158 U.S. 550 (1898) (holding that one who is threatened while on his own land and was in reasonable fear of his life had no duty to retreat and was entitled to stand his ground and use force that he reasonably believed was necessary to save his life). Whether Mr. Smith's had a subjective perception of fear, and whether his

6

response was reasonable, is a question committed to the jury's sole discretion. *See Couch*, 52 N.M. at 140 ("Whether the amount of force used by appellant was more than the attack warranted was a question for the jury to determine, under proper instructions from the court. And the most difficult point to impress on the minds of the jury in this class of cases is that the danger, or apparent danger, must be considered from the standpoint of the [defendant] at the time the shot was fired.")

The government's efforts to hamstring Mr. Smith's defense are a frontal assault to his Sixth Amendment Right to a jury trial and Fifth Amendment right to the due process of law.

Respectfully Submitted,

**FEDERAL PUBLIC DEFENDER**
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494 Fax
aric_elsenheimer@fd.org
amanda_lavin@fd.org

*Electronically filed July 29, 2020*
/s/ Amanda R. Lavin
/s/ Aric G. Elsenheimer
Assistant Federal Public Defenders
Counsel for Defendant

8