IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | No. CR 1:18-03495-001 JCH |
| | ) | |
| vs. | ) | |
| | ) | |
| **DOUGLAS D. SMITH,** | ) | |
| | ) | |
| Defendant. | ) | |

**Mr. Smith's response to the government's notice
to offer his recorded statements in its case-in-chief (Doc. 77)**

Mr. Douglas Smith, by and through undersigned counsel, Assistant Federal Public Defenders Aric G. Elsenheimer and Amanda R. Lavin, submits this response to the government's notice of intent to introduce Mr. Smith's recorded statements in his case-in-chief.

The government's motion should be denied because it does not precisely identify the exact statements the government seeks to introduce and therefore does not provide Mr. Smith an opportunity to seek the surrounding statement's introduction under Fed. R. Evid. Rule 106's rule of

completeness. Aside from this procedural objection, Mr. Smith generally has no objection to the entirety of Mr. Smith's statements being introduced into evidence. But Mr. Smith does, however, object to the government's piecemeal and prejudicial selection of his statements to introduce to the jury. The government's efforts to use hand-picked and out-of-context statements Mr. Smith made to law enforcement violates the rule of completeness of Rule 106 and violates Mr. Smith's right to the due process of law and right to a trial by jury under the Sixth Amendment.

Mr. Smith made three separate statements to law enforcement. These statements demonstrate Mr. Smith's effort to be candid with law enforcement. They also demonstrate Mr. Smith's shock, bewilderment, and fear about what he had just experienced, and the problems he had experienced on his property. The government seeks to cherry pick isolated statements to paint a distorted picture of someone who bears little resemblance to Mr. Smith.

The government begins this inaccurate portrait by claiming that Mr. Smith's statements "include a general description of how he discharged his

firearm after he saw Jane Doe's shadow and her eyes as she looked at him." But Mr. Smith never said he "saw Jane Doe's . . . eyes." What he said was that he "heard somebody at my mom's trailer and then I saw somebody and then somebody – there was a shadow, like, looking down, trying to eyeball in my direction." (Doc. 66-2, 10:11-12. "Trying to eyeball in my direction" does not mean that Mr. Smith saw the intruder's eyes. The term eyeball, a term the government appears unfamiliar with, despite its widespread use in American English, means to look at something or stare at something closely.[1] This is exactly what the intruder did, turned to Mr. Smith, stepped toward him, crouched down, and stared at him. Mr. Smith said that the intruder "eyeballed" him. He did not say he saw "her eyes." (Doc. 77 at 2).

    The government then goes on to describe how Mr. Smith did not see any weapons in the intruder's hands or anything in the intruder's hands. This description leaves out a critical part of Mr. Smith's statements---that he could not see what was in the intruder's hands and therefore did not

---

[1] *See* https://merriam-webster.com/dictionary/eyeballing (defining "eyeballing" as "to look at intently especially in making an evaluation or choice").

3

know what was in the intruder's hands. As Mr. Smith explained to the FBI, "Just ducking down the way whoever it was, the shadow, was looking at me, I was – I just got scared." (Doc. 66-3 at 46). As Mr. Smith explained in an earlier interview to Detective Abeyta, "So I shot to miss, missed the trailer and missed the – I think I shot to miss the trailer, sure hope so. But at that point, I was scared shitless because that person was eyeballing me, and I thought, oh, shit. They're going to start blasting away at me, so I thought I better scare them off." (Doc. 66-2, 14:24-15:3).

The government continues to leave out critical details of Mr. Smith's statements. (Doc. 77 at 2). The government states that the Mr. Smith could not reload his firearm, but does not complete the statement that he could not reload the gun because his hands were shaking because he was "too nervous." (Doc. 66-3 at 38:2).

The government's efforts to mischaracterize Mr. Smith's statements, to leave out critical details of those statements, and to otherwise paint an inaccurate, prejudicial, and false picture of Mr. Smith will, if permitted at trial without the remainder of Mr. Smith's statements admitted, deprive

4

Mr. Smith of his right to due process under the Fifth Amendment and his right to a jury trial under the Sixth Amendment.

It is precisely to guard against this concern that the Federal Rules of Evidence, in Rule 106, requires that "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." "The purpose of Rule 106 is to prevent a party from misleading the jury by allowing into the record relevant portions of a writing or recorded statement which clarify or explain the part already received." *United States v. Moussaoui*, 382 F.3d 453, 481 (4th Cir.2004).

The government should not be allowed a blank slate on which to paint a distorted image of the events of May 5th and Mr. Smith's statements. Under the rule of completeness, Mr. Smith should be entitled to place into the record any relevant portion of his statement to law enforcement, and the recording and video of that statement, to provide the jury a clear and accurate view of his entire statement to law enforcement.

5

The government's efforts to cut and paste Mr. Smith's statements that are favorable to the government, while seeking to keep the jury blind to an accurate recounting of what Mr. Smith said, not only encourages the prejudicial mischaracterization of Mr. Smith's words, it deprives the jury of the critical evidence it needs to evaluate Mr. Smith's state of mind, his perception of the threat to his safety, and his reasons for responding the way he did.

Keeping the jury blind to those critical pieces of evidence, while prejudicially isolating and taking out of context certain statements to paint Mr. Smith in the most malignant light possible, deprives Mr. Smith of his right to due process and his right to a fair trial. In addition to the legal basis under Rule 802(2) and 807 of the Federal Rules of Evidence for the admission of Mr. Smith's statements, the Court should also allow the entirety of the relevant parts of Mr. Smith's statements under the Rule 106 rule of completeness.

**FEDERAL PUBLIC DEFENDER**
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494 Fax
aric_elsenheimer@fd.org
amanda_lavin@fd.org

*Electronically filed July 29, 2020*
/s/ Amanda R. Lavin
/s/ Aric G. Elsenheimer
Assistant Federal Public Defenders
Counsel for Defendant

7