IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                            No. 18-cr-3495 JCH

DOUGLAS D. SMITH

    Defendant.

**MEMORANDUM OPINION AND ORDER**

On April 16, 2020, Defendant Douglas Smith filed a *Motion to Suppress Evidence* (ECF No. 49), seeking suppression of all evidence obtained from the execution of a warrant at Defendant's property at 825 North Riverside Drive in Española, New Mexico, (the "Property") on August 22, 2019. Defendant contends that the warrant lacked probable cause because the information contained therein was stale, and he requests a hearing on the motion. It is undisputed that the search of the Property occurred after the agents obtained a warrant from the Honorable Jerry H. Ritter for the purpose of taking photographs, spherical photography (360 degree photography), and 3D scanning of the exterior of the Property to make a model, videography, and trajectory analysis. Because the search occurred pursuant to a warrant, the Government responds that no hearing is necessary on this issue because it is based on the contents of the warrant and supporting affidavit, not on outside evidence. The Government further contends that there was probable cause to believe that evidence of a crime would be found on the Property, even after the passage of approximately 15 months from the alleged crime having occurred there, because of the fixed nature of the structures and objects at the crime scene. Finally, the Government argues that the good faith exception applies. The Court finds that no hearing is necessary for its resolution of

this legal issue. Having considered the motion, response, reply, warrant, affidavit supporting the warrant, and otherwise being fully advised, the Court concludes that the motion to suppress should be denied.

## I. FACTUAL BACKGROUND

A federal grand jury charged Defendant Smith, a non-Indian, with unlawfully killing Jane Doe, an Indian, with malice aforethought on or about May 5, 2018, in Indian Country, in violation of 18 U.S.C. §§ 1152 and 1111. *See* Indictment, ECF No. 24. The parties agree that the alleged crime occurred on the Property. *Compare* Gov.'s Resp. 1, ECF No. 53, *with* Def.'s Mot. 2-4, 6, ECF No. 47.

Special Agent Travis Taylor of the Federal Bureau of Investigation ("FBI") submitted to Judge Ritter an Affidavit in Support of Application for a Search Warrant of the Property. *See* Aff. 1, 6, ECF No. 72-1 at 6-11 of 15. Special Agent Taylor sought the warrant "for the purposes of having a FBI team take further spherical photos, videos, and scan mapping in order to create a 3D model and conduct trajectory analysis of the crime scene." *Id.* at 6 of 15. Judge Ritter approved the warrant on August 15, 2019. *Id.* at 11 of 15. Agents executed the warrant on August 22, 2019, at 9:15 a.m. *See* Search and Seizure Warrant 2, ECF No. 72-1 at 15 of 15. Although agents did not take any items, they made 3D scans of the Property and conducted photography. *Id.* The Government's proposed expert FBI Special Agent Theodore Chavez based his trajectory analysis primarily on the imaging taken on August 22, 2019. *See* Chavez Report, ECF No. 54-4 at 2 of 11.

The following facts are those set forth in the affidavit supporting the search warrant. *See* Aff., ECF No. 72-1 at 7-10 of 15. Defendant shot a woman unknown to him with a .22LR handgun after he allegedly observed her attempting to break into his mother's camper trailer. *Id.* at 7 of 15. After the Española Police Department completed the initial crime scene investigation and

Detective Byron Abeyta read him his *Miranda* rights, Defendant agreed to be interviewed. *Id.* According to Defendant in his interview, he heard motion sensors in his yard go off three times that night. *Id.* at 8 of 15. Taking his firearm and ammunition, he did not see anything when he went outside after each of the first two times, but when he checked the third time, he saw the shadow of a person trying to hide behind bushes and staring at him near the door of his mother's camper trailer. *Id.* Defendant said he began shooting toward the left of the camper as he stood on the porch, and that when the shadow began running to the left after the first shot, he continued to shoot in the same general direction of the person, as he did on a prior occasion with another person on his property. *Id.* Defendant also stated in the interview that he searched the area and observed a body on the ground, so he called 911. *Id.* at 8-9 of 15.

Subsequently, the victim was identified as M.G. (herein "Jane Doe") and it was determined she sustained one fatal gunshot wound to her upper left temple. *Id.* at 9 of 15. Authorities found no weapons or burglary tools near her body. *Id.* Federal authorities arrested Defendant on May 7, 2018, after which FBI Special Agents Taylor and Michelle Cobb interviewed him. *Id.* During the interview, Defendant reiterated what he told Detective Abeyta, added that in the past he had fired warning shots at trespassers on his property, and drew a picture of the property outlining where he was and where Jane Doe was when he began shooting. *Id.* at 9-10 of 15. Defendant said that, when he first saw Jane Doe, she made no moves towards him and he did not see anything in her hands. *Id.* at 10 of 15.

## II.   ANALYSIS

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause …." U.S. Const., amend. IV. A search warrant

must be based upon probable cause, which a reviewing court determines by examining the affidavit supporting the warrant. *See United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011). The court determines the "sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* (internal quotations omitted). Probable cause to search or seize exists when, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

### A.     Staleness

Probable cause cannot be based on stale information that no longer indicates the items sought will be in the place searched. *United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir. 2004). In determining whether information is too stale to rely upon for probable cause, a court should consider "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized" *Id.* at 1207 (quoting *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990)). Ongoing criminal activity makes the passage of time less critical when considering the staleness of information. *United States v. Roach*, 582 F.3d 1192, 1201 (10th Cir. 2009). Under Tenth Circuit law, reviewing courts should give "considerable" deference to a magistrate judge's determination of probable cause by determining only whether the magistrate judge "had a substantial basis for concluding that probable cause existed." *Mathis*, 357 F.3d at 1205.

"It is a violation of the Fourth Amendment for an affiant to knowingly and intentionally, or with reckless disregard for the truth, make a false statement in an affidavit." *United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir. 2001) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)). "Under *Franks*, a hearing on the veracity of the affidavit supporting a warrant is required

if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997).

With respect to his motion to suppress, Defendant does not assert that suppression is required because Special Agent Taylor made any false statements or material omissions in the affidavit, so *Franks* does not apply.[1] Instead, Defendant contends that there was no probable cause to believe evidence of an alleged homicide would be present at the Property when it occurred 15 months earlier and nothing in the warrant indicates why photographs taken so long after the incident would accurately depict what the Property looked like at the time. According to Defendant, at least three people live on the Property, and landscaping changes likely would have occurred since the purported crime. Defendant further points out that the warrant states Defendant said he had fired warning shots on prior occasions, so evidence collected could be from prior incidents. The Government responds that the items sought – photography, scans, and trajectory analysis – are of fixed, enduring structures and objects at the crime scene, so the information sought regarding configuration of the buildings, the porch, shed, yard area, trees, bushes, and camper trailer would not be stale.

Although 15 months is generally a long time when considering whether evidence may be found at a crime scene, the nature of the criminal activity and the nature of the object of the warrant

---

[1] In Defendant's *Motion for Production of Grand Jury Transcripts* (ECF No. 51), Defendant argues that Special Agent Taylor in the affidavit mischaracterized the evidence regarding what Defendant told Detective Abeyta concerning shooting in the general direction of the person, as he had done on a prior occasion with another person. *See* Def.'s Mot. for Prod. 9, ECF No. 51. Defendant contends Special Agent Taylor misconstrued his statements, because he really said that he could not see the shadow when it went behind bushes, that he was panicky shooting to scare them off, and that he was not really shooting at anybody, just shooting to make noise to get them to run off. *Id.* at 9-10. For the reasons discussed in the Memorandum Opinion and Order resolving the motion for production, the Court finds that Special Agent Taylor did not make a material misrepresentation that obviates probable cause. Moreover, the Court finds that, even had Special Agent Taylor included the exact wording of Defendant's statement, probable cause would still exist to take photographs and conduct a trajectory analysis on the Property.

in this case weigh in favor of finding probable cause. The warrant did not authorize the seizure of physical items of evidence. Instead, the warrant sought to permit agents to take photographs primarily of the exterior of the property, including the physical structure of the house, porch, shed, trees, and bushes. Although the foliage of the bushes and trees may have looked differently and cars and a camper could have changed locations, other items, like the house, shed, fence, trees, and bushes, were relatively enduring or fixed structures whose locations and arrangement in relation to one another would not likely have changed within 15 months. Although the alleged crime was not of an ongoing nature, there was a fair probability that taking photographs and doing a trajectory analysis of the crime scene might reveal evidence of the crime. There is a nexus between the alleged homicide and the layout of the crime scene. Defendant referenced the layout of the crime scene in his statements and created a diagram of his and Jane Doe's respective positions, so there was a fair probability that the layout of the physical structures of the exterior of the Property would reveal evidence of the crime. *Cf. United States v. Diecidue,* 603 F.2d 535, 560 (5th Cir. 1979) (concluding that probable cause supported warrant for items, including projectile, because although information regarding projectiles was four months old, there was considerable likelihood that information was not stale because floors and walls of house are relatively permanent fixtures and would not likely be subject to removal over period of four months). *See also United States v. McCall*, 740 F.2d 1331, 1337 (4th Cir. 1984) (noting importance for Fourth Amendment staleness analysis of whether evidence sought is intrinsically likely to remain at location where it was originally observed). For the foregoing reasons, the Court concludes that

there was probable cause to support the issuance of the warrant. The Court will therefore not suppress the evidence obtained from the execution of the warrant.[2]

### B.   Good Faith Exception

In the event a search warrant is not supported by probable cause, the search may still be legal if the court finds that officers reasonably relied in good faith on the sufficiency of the warrant issued by a neutral and detached magistrate judge. *See United States v. Leon*, 468 U.S. 897, 913 (1984). The good faith exception is often applied in a situation where a warrant lacked probable cause or failed the Fourth Amendment's particularity requirement. Here, the Court has already concluded that the warrant was supported by probable cause. Therefore, it examines the question of good faith in the alternative, in the event the warrant is later found to be lacking probable cause.

The *Leon* good-faith exception does not apply when: (1) the magistrate judge issuing the warrant was misled by a deliberately or recklessly false affidavit; (2) the magistrate judge wholly abandoned his or her detached and neutral judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officers cannot reasonably presume it to be valid. *Id.* at 923. In such instances, "a reasonably well trained officer would have known that the search was illegal", and, as a result, suppression of the unlawfully obtained evidence remains an appropriate remedy. *Herring v. United States*, 555 U.S. 135, 145 (2009) (internal citations and quotation marks omitted).

In this case, Defendant argues that it was not reasonable for agents to rely on the warrant based on an isolated criminal event occurring over a year prior to the issuance of the warrant. The

---

[2] The Court makes no decision herein regarding the foundational issues for admissibility of the evidence at trial. For example, some of this evidence is the subject of the United States' Motion *in Limine* to Admit Use of Demonstrative Exhibit During Trial (ECF No. 73).

affidavit supporting the warrant, however, contained considerable factual detail that an alleged crime occurred on the Property. Moreover, the agents were not seeking items of physical evidence, but instead were primarily taking photographs, scans, and doing trajectory analysis to create an exterior model of the Property -- the layout of the house, porch, shed, trees, and bushes of which are likely fixed and in the same location as 15 months before when the purported crime occurred. Consequently, the agents reasonably relied in good faith on the sufficiency of the warrant issued by a neutral and detached magistrate judge.

**IT IS THEREFORE ORDERED** that Defendant's *Motion to Suppress Evidence* (**ECF No. 49**) is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**
**JUDITH C. HERRERA**