IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CR 1:18-03495-001 JCH |
| ) | |
| DOUGLAS D. SMITH, ) | |
| ) | |
| Defendant. ) | |

**MOTION FOR STATEWIDE JURY POOL
AND SUPPLEMENTAL JURY QUESTIONNAIRE**

Douglas Smith, by his counsel, requests that the Court provide a statewide jury pool for jury selection in the trial of this matter and provide the Defendant's proposed supplemental jury questionnaire to all members of the pool for completion prior to voir dire.

**BACKGROUND**

On October 23, 2018, a grand jury sitting in this District returned an Indictment charging Mr. Smith with second degree murder of Jane Doe, in violation of 18 U.S.C. §§ 1152 and 1111. (Doc. 24.)

Trial is currently not scheduled but may take up to one to two weeks to complete. This case will likely include photographs and testimony that may be traumatic. Moreover, this case has been the subject of media coverage, which may have been seen by potential prospective jurors.

Given the nature of the case, Mr. Smith proposes the attached supplemental jury questionnaire. *See* **Exhibit A**, Defendant's Proposed Jury Questionnaire. Defendant has provided it to the United States.

The United States indicates it is opposed to the questionnaire. The United States is also opposed to a statewide jury pool.

## ARGUMENT

**I.    The Court should provide Mr. Smith with a statewide jury pool, rather than one from only the Northern Division.**

A statewide jury pool is warranted in this case given the nature of the charges, the media attention the case has garnered, the risk of prejudice to Defendant from a non-diverse jury pool and the risk of not obtaining a jury pool that represents a fair cross-section of the community. "It is the policy of the United States that all litigants in federal courts entitled to trial by jury shall have the right to grand and petit juries selected

at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C.A. § 1861. As an instrument of public justice, a "jury [must] be a body truly representative of the community." *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975); *See United States v. Grisham*, 63 F.3d 1074, 1080 (11th Cir. 1995) (holding that "the Sixth Amendment does not entitle a federal criminal defendant to a jury summoned from a fair cross-section of the community immediately surrounding the place of the crime, but merely to a jury drawn from a fair cross-section of some previously defined geographical area within the boundaries of the judicial district in which the offense occurred").

Courts has previously ordered a statewide jury pool in complex cases as well as in high profile cases. For example, the Court ordered a statewide panel in *United States v. Robert Vigil* due to extensive pretrial publicity. *See* Memorandum Opinion [Doc. 290] at 2, *United States v. Vigil*, Case No. 05-CR-2051 JB (filed Aug. 16, 2016) ("To empanel a fair and impartial jury, the Court summoned 1,200 jurors from a venire comprised of citizens from all three of the District's Petit Jury Divisions: (i) Albuquerque/Santa Fe; (ii)

Las Cruces; and (iii) Roswell."). In *United States v. McCluskey*, Case No. 10-CR-2734 JCH, the Court mailed availability and qualification questionnaires to a statewide venire of 1800 persons. *United States v. McCluskey*, Case No. 10-CR-2734 JCH, Doc. 453 (filed May 14, 2012). Given the pretrial publicity in this case, the fact that the press coverage of this case reached a wide readership in northern New Mexico, and at least one significant inaccuracy in the press coverage, a statewide panel is appropriate in this case for the same reasons as in *Vigil* and *McCluskey*. This case received widespread media coverage in May of 2018. Local stories appeared in the Albuquerque Journal, the Rio Grande Sun (the local daily newspaper in Espanola and the wider Espanola valley), on KOAT, KOB4, and KRQE, as well as the Santa Fe New Mexican. (See **Exhibits B-J**, collected local media coverage).

Much of the coverage of this case contained at least one significant factual inaccuracy, particularly about the number of times M.G. was struck with a bullet. For example, The Santa Fe New Mexican inaccurately wrote that "he [referring to Mr. Smith] hit the woman twice in the forehead."

4

(**Exhibit C**). The Albuquerque Journal repeated this inaccuracy. (*See* **Exhibit E**), recounting that the "The identity of the woman who was killed by two gunshot wounds to the head has not been released.".

More recently, in denying a defendant's request for a jury panel selected from a division different from the place of the holding court, a court in the District of New Mexico nonetheless recognized its authority to order a statewide jury in high profile trials such as this one. *See* Memorandum Opinion [Doc. 80] at 18- 19, *United States v. Rodella*, Case No. 14-CR-02783 JB (filed Sept. 15, 2014). As that court noted, "it could be desirable sometimes to select a statewide venire when publicity on a case is intense. *One side should not be able to prohibit the Court from drawing a statewide venire.*" *Id*. (emphasis added). In this case, the United States cannot prohibit the Court from drawing a statewide venire as necessary to protect the defendant's right to a fair and impartial jury.

A statewide panel is even more important given the ongoing COVID-19 pandemic. Many locations in the north area of the state, particularly Bernalillo County, Santa Fe County, and Rio Arriba County are at risk for,

or experiencing active or imminent outbreaks of the Coronavirus. *See* https://covidactnow.org (for a county-by-county description of daily cases per 100,000 people, positive test rates, and infection rates). Given the unpredictable nature of when certain areas may be experiencing outbreaks of the pandemic, it would be prudent to draw jurors from the widest area possible to ensure that a broad cross section of the community is able to attend jury selection so that the jury is comprised of a jury of Mr. Smith's peers.

**II.     The Court should propound Defendant's proposed supplemental Jury Questionnaire.**

"To be meaningful, the adequacy of voir dire examination must allow the defendant an opportunity to make reasonably intelligent use of his peremptory challenges and challenges for cause." *United States v. Sandoval*, Case No. 04-CV-2362 JB; 2006 WL 1304955, at *2 (D.N.M. Feb. 1, 2006) (citing *United States v. Rucker*, 557 F.2d 1046, 1049 (4th Cir. 1977)). "[V]oir dire is within the sound discretion of the trial court, and the court's exercise of that discretion will not be disturbed, absent a clear showing of abuse." *Id.* (quoting *United States v. Whitt*, 718 F.2d 1494, 1497

6

(1983) (citations omitted). This Court has broad discretion in overseeing and managing the jury selection procedure. *Id.* (quoting *United States v. Morris*, 623 F.2d 145, 151 (10th Cir. 1980).

Courts have noted that a juror questionnaire can be "a useful tool to more easily facilitate voir dire." *Lowery v. City of Albuquerque*, Case No. 09-CV-0457 JB-WDS; 2012 WL 1372273, at *5 (D.N.M. Apr. 11, 2012).

A court in the District of New Mexico has ordered prospective jurors to complete juror questionnaires before voir dire as it found this would aid the Court and the parties in obtaining information that will be helpful for the exercise of early cause and peremptory challenges and reduce unnecessary questioning during voir dire. *Lowery*, 2012 WL 1372273, at *5 (quoting *Sandoval*, 2006 WL 1304955, at *3). In *Lowery*, the district court noted how the questionnaire "will aid judicial economy by allowing the Court to use the limited time available for voir dire to more fully explore any issues revealed within the questionnaires." *Id.* The questionnaire will aid the Court and the parties in more effectively determining the existence

7

and substance of challenges for cause, as well as assisting the parties in the exercise of their peremptory challenges.

In *Sandoval*, the Court permitted a jury questionnaire over the government's objection in a child sex abuse case. The Court reasoned:

> The proposed questionnaire will aid the Court and the parties in obtaining and receiving information that will be helpful for the exercise of early challenges for cause so that prospective jurors do not have to be subjected unnecessarily to questioning in Court in voir dire. The questionnaire will allow the prospective jurors the opportunity to retain some measure of privacy on the sensitive issues that arise in this case, such as sexual abuse, incest, gambling, and religious differences.
>
> The questionnaire will aid judicial economy by allowing the Court and the parties to use the often limited time available for voir dire to address more substantive matters. The questionnaire will also allow the prospective jurors to provide some information about necessary but more mundane lines of inquiry outside the courtroom, thereby relieving the Court of the need to convene to conduct questioning about such mundane matters. By addressing these mundane matters in the questionnaire, the Court will be able to use the time available for in person voir dire more efficiently. The questionnaire will aid the Court and the parties in more effectively determining the existence and substance of challenges for cause, and in exercising

> those challenges, as well as assisting the parties in determining and exercising peremptory challenges.

*Sandoval*, 2006 WL 1304955, at *3.

The same considerations are in play in Mr. Smith's case. Although the character and quality of charges is different than in *Sandoval*, given the allegations in this case, much more exacting jury questioning will be required to explore potential bias than in a normal, run-of-the-mill voir dire.

The ongoing pandemic substantially increases the benefit of supplemental jury questionnaires. Such supplemental questions can identify individuals who may have a bias in a particular case, express an inability to exercise impartiality, and thus significantly reduce the amount of time that the parties must engage with each juror in an in-person setting. As the Court recognized in *Sandoval*, a questionnaire can help jurors retain some privacy in answering questions of a sensitive nature. A questionnaire is a far superior method to inquire into sensitive matters than voir dire in open court. Like in *Sandoval*, the proposed questionnaire will promote judicial economy during voir dire and help counsel for all parties identify

9

peremptory and cause challenges. Because there is one Defendant proceeding to trial, voir dire could take longer and engender more questioning of prospective jurors. The proposed questionnaire will help streamline this process and limit the number of questions posed to each juror during voir dire.

**CONCLUSION**

For the foregoing reasons, Mr. Smith, by his counsel, respectfully requests the Court provide a statewide jury pool for jury selection in the trial of this matter and propound Mr. Smith's proposed supplemental jury questionnaire.

Respectfully Submitted,
**FEDERAL PUBLIC DEFENDER**
111 Lomas Blvd., NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494 Fax
aric_elsenheimer@fd.org
amanda_lavin@fd.org

*Electronically filed December 16, 2020*
/s/ Amanda R. Lavin
/s/ Aric G. Elsenheimer
Assistant Federal Public Defenders