IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cr. No. 18-03495 JCH |
| | ) |
| **DOUGLAS D. SMITH**, | ) |
| | ) |
| Defendant. | ) |

### RESPONSE TO COURT'S ORDER RE ADMISSIBILITY OF 911 CALL UNDER EXCITED UTTERANCE EXCEPTION TO HEARSAY RULE (DOC. 160)

The United States maintains that both of Defendant's 911 call statements referencing "there was someone breaking into the building back here" (911 Tr. at 2:6-7) and generally alleging that "we've had a lot of breakins" (911 Tr. at 3:12-13) are self-serving, misleading, and should not be admitted as an excited utterance because Defendant took his time to call 911. After killing Jane Doe, Defendant reloaded his gun, turned over Jane Doe's body, walking around the crime scene, and additionally had time to confer with his tenant, Ercilia Trujillo, who told him to call 911 before he eventually made the call. With each passing moment, Defendant was able to construct his own self-serving narrative to explain why he shot and killed Jane Doe. Moreover, Defendant's description of someone breaking into the building in his 911 call is highly prejudicial and an effort at jury nullification since there is no evidence to show Jane Doe was breaking into anything, much less a structure that can be described as a "building" that warranted any type of defense. Defendant later reported that the camper trailer at issue was sufficiently locked, which makes his 911 call statements about break-ins even more problematic.

During his consensual interview, Defendant explains to Espanola Police Detective Byron Abeyta that, "I saw somebody looking at me like that, I thought, uh-oh, and went into total

absolute scared witless at the time. And from that point on, I wasn't really thinking about being careful, as careful as I should have been under the circumstances. I went out the back gate, and, uh, I thought, oh, wow. I don't know who -- if there's any more around or if that was just the one person or if there's more. So I thought I better put some extra bullets in, and I took the plastic bag I had with some extra bullets. But I -- I couldn't really – couldn't put any in." Doc. 132-2 at 22:21-25, 23:1-8. After taking the time to attempt to reload his firearm Defendant also admitted that he touched Jane Doe's body and walked around the crime scene.

Defendant told Detective Abeyta that he thought he shot Melanie so he went to the body to check, stating: "So I went and I picked -- moved her, just pulled her shoulder up like that to see if it was Melanie." *Id.* at 24:1-16. Defendant continues, "But it wasn't Melanie so I thought, well -- and then I saw she was not moving. I went in and set the gun down before I went in the house outside there just in front of the gate and went in and called 911. *No.* I went around to the front to see if there was anybody else around. I checked the front. Where that big bush is on the corner there, I went around that just to look, looked around, and by that time, uh, Ercilia had opened her door, and she was shining the flashlight on the person laying there." *Id*. at 24: 3-13 (emphasis added). Initially, Defendant states he called 911, but then corrects himself and explains, "*No*," he took time to walk around the crime scene. Defendant still had not called 911 at that point and states Ercilia then opened her door.

Defendant additionally had time to confer with Ms. Trujillo before calling 911. On May 18, 2018, FBI Special Agents Travis Taylor and Michelle Cobb interviewed Ms. Trujillo at the motel. Doc. 164-1. During that interview, Ms. Trujillo describes talking to Defendant after he shot and killed Jane Doe. Defendant told Ms. Trujillo "she was going to break in." *Id*. at 23: 18-19. Ms. Trujillo responded, "'Well,' I said, 'that's not the only time that this girl probably tried

this.'" *Id*. at 20-21. It is clear that after this conversation with Ms. Trujillo, Defendant's statement to the 911 operator had evolved from the speculative, "she *was going* to break in" to the assertion that" there *was* someone breaking into the building back here." Defendant stood over Jane Doe's deceased body as Ms. Trujillo attempted to justify his conduct. Defendant then furthered this justification in his 911 call as he explained to the operator that someone was indeed breaking into a building, rather than his uninhabited, locked camper trailer full of his late mother's objects that he had not opened in the ten years since she passed away (Doc. 132-3 at 53:13-22, 9:21).

Defendant's 911 call assertion that someone was breaking into the building is not only self-serving, it is misleading. There is no evidence to show Jane Doe, who was on Defendant's property, which is clearly a motel, was breaking into any property. Detective Abeyta asked Defendant, "so at no point was – so she was trying to get into your trailer, right?" Doc. 132-2 at 21:20-25. Defendant responds in what seems to be agreement and says, "Apparently." *Id.* at 21:22. Detective Abeyta continues his question, "--to your – to your mom's trailer or camper?" *Id*. at 21:23-24. Defendant then says, "Yeah." *Id*. at 21:25. Detective Abeyta then seeks to clarify, "At no point did you --" and Defendant interrupts and says "It was locked so there was no --." *Id*. at 22:1-2. Defendant seems to agree that Jane Doe was not trying to get into his trailer and that she could not have broken in because the camper trailer was locked. Moreover, Jane Doe did not have any weapons or burglary tools on her person.

Moreover, the fact that Defendant explains to the 911 operator that someone was breaking into a "building" has potential to mislead the jury and is an attempt at jury nullification. Defendant cannot show Jane Doe was breaking into his home or any other building and that his killing of her was somehow self-defense, defense of another, or defense of habitation. As this

3

Court has determined, Defendant's self-defense and defense of habitation is likely to fail as a matter of law. Doc. 141 at 24. The Court further examined that even if state law applied, Defendant is not likely to meet self-defense under state law, because there is "little evidence that he subjectively understood it to be a *violent* felony. There is no evidence that he or anyone else lived in the trailer or that anyone was in the trailer at the time." *Id*. at footnote 4. Since Defendant cannot show Jane Doe was breaking into anything, much less a building, Defendant should not be permitted to elicit this evidence. Defendant made his statements to the 911 operator after he moved Jane Doe's body, walked around the crime scene, and conferred with his neighbor. He had a sufficient amount of time to deliberate and contrive his self-serving statement to explain his criminal conduct. As such, the United States opposes Defendant's request to elicit this evidence as an excited utterance.

    Respectfully submitted,

    FRED J. FEDERICI
    Acting United States Attorney

    *Electronically filed on 06/02/2021*
    NOVALINE D. WILSON
    KYLE T. NAYBACK
    Assistant United States Attorneys
    Post Office Box 607
    Albuquerque, New Mexico  87102
    (505) 224-1419

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause a copy of this filing to be sent to counsel for Defendant.

 /s/
NOVALINE D. WILSON
Assistant United States Attorney