IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No.   CR 1:18-03495-001 JCH |
| DOUGLAS D. SMITH, | § § | |
| Defendant. | § § | |

**Response to the Court's order regarding the 911 call**

After encountering an intruder on his property and firing his gun, Mr. Smith walked to a car on his property and tried to re-load the clip. He was unable to because, as he explained to law enforcement, he was shaking. He then walked toward the front of his house and saw someone laying in his driveway. When interviewed by the FBI, Mr. Smith's neighbor Ercilia Trujillo said that Mr. Smith was "visibly shaking." Similarly, in her grand jury testimony, Ms. Trujillo said that after she heard shots, she opened the door and saw "Doug shaking." told Mr. Smith to "call the cops." That is what he did. All of the evidence indicates that Mr. Smith

immediately called 911. Particularly noteworthy is that Ms. Trujillo reported to the FBI that the police responded "quickly" after she told Mr. Smith to call 911, suggesting that his call was placed to 911 immediately after Ms. Trujillo saw him "visibly shaking."

According to the Court's order, the sole remaining issue is whether Mr. Smith was under the stress of the excitement caused by the event at the time he made the 911 call. To be admissible as an excited utterance, a statement "'need not be contemporaneous with the startling event to be admissible,'" but rather "'must be contemporaneous with the excitement engendered by the startling event.'" *United States v. Alexander*, 331 F.3d 116, 122 (D.C.Circuit 2003) (quoting *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir.) and *United States v. Joy*, 192 F.3d 761, 766 (7th Cir. 1999)).

Mr. Smith's call and statements to 911 were contemporaneous with the stress of the excitement caused by his encountering an intruder on his property and firing his gun to scare that intruder, and then realizing he had accidentally killed a human being. The stress inherent in all of these events is undeniable. He was awoken in the middle of the night by the sounds of

his motion sensors going off, he went on to his front porch with his pistol, saw a shadow and heard someone breaking into his trailer, he fired his gun in warning, and then later realized he had accidentally killed someone. The idea that he would have somehow completely recovered from the shock these traumatic events engendered by the time he called 911 only minutes later, is preposterous.

Furthermore, the statements he made on the 911 call are consistent with his subsequent statements to law enforcement: he heard someone breaking in to his trailer, saw a shadow, fired a warning shot in the opposite direction of the shadow, then fired a few more warning shots after the heard running footsteps and believed the person had left his property. The consistency further elevates the reliability of his statements made on the 911 call.

After firing the warning shots, Mr. Smith walked to his car, tried to re-load his pistol, and then walked to the front of the house. It was then that Ms. Trujillo saw Mr. Smith visibly shaking and told him to call 911. Mr. Smith immediately called 911. *See United States v. Pursley*, 577 F.3d

1204, 1221 (10th Cir. 2009) (holding that the passage of time of twenty to thirty minutes was "well within the temporal range of trauma contemplated by Rule 803(2)").

WHEREFORE, Mr. Smith requests that the Court admit his statement to 911 under the 803(2) excited utterance exception to the hearsay rule.

                                              Respectfully submitted,

                                              FEDERAL PUBLIC DEFENDER
111 Lomas Blvd., NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(5050 346-2494 Fax
aric_elsenheimer@fd.org

ARIC G. ELSENHEIMER, AFPD
Attorney for Defendant

4