IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff, | § § | |
| v. | § § | No.   CR 1:18-03495-001 JCH |
| DOUGLAS D. SMITH, | § § | |
| Defendant. | § § | |

**Response to the government's objections to Mr. Smith's jury instructions**

Mr. Smith responds to the government's objections to his proposed jury instructions.

1.      Mr. Smith requests the court strike the language "callous and wanton disregard for human life" from the Tenth Circuit Pattern Jury Instruction for second degree murder, consistent with the ruling in United States v. Lesina, 833 F.2d 156, 158 (9th Cir. 1987), where the court held that the similarity between the language in the instructions for second-degree murder and involuntary manslaughter made it impossible for a trier of fact to draw a distinction between the elements for each crime.   The instruction

for malice aforethought in *Lesina* – the element needed for second-degree murder – was either deliberately and intentionally killing another person or acting "with callous or reckless disregard for human life." *Id*. The jury was also instructed that to establish involuntary manslaughter, the government was required to prove, in part, that defendant killed victim "without malice, but with wanton or reckless disregard for human life." The appellate court concluded that no rational trier of fact could be expected to differentiate second degree murder from involuntary manslaughter with these instructions, and the district court's failure to properly distinguish the elements was reversible error. *Id*.

      Mr. Smith proposes a modification of the Tenth Circuit's pattern jury instruction to properly distinguish the elements of second degree murder from involuntary manslaughter. Mr. Smith updates that language with the terms "cruel and deliberate." The language "cruel and deliberate" is identical in meaning to the terms "callous and wanton" but will not confuse the jury with outdated and obsolete terminology. Mr. Smith also proposes to omit the sentence "To find malice aforethought, you need not

be convinced that that the defendant hated the person killed, or felt ill will toward the victim at the time." As discussed in footnote 1, that language has no bearing on the element of "malice aforethought" and is therefore confusing and unnecessary.

2. Mr. Smith proposes an instruction for involuntary manslaughter. Mr. Smith agrees with the government that the Tenth Circuit pattern instruction for involuntary manslaughter should be used at trial. The defense has no objection to the inclusion of the section 1152 elements and will submit an amended jury instruction incorporating those elements.

3. As Mr. Smith made clear in his pleadings, under New Mexico law, particularly as that is articulated in *State v. Couch*, Mr. Smith would be entitled to defend his property by firing his gun. *See State v. Couch*, 52 N.M. 127 (1946) ("[i]f one is committing acts in or about a dwelling, which reasonably and in good faith are believed to manifest a felonious intent, a man having the right of defense as to such dwelling may resort to force to repel the attack or prevent the frlony [sic], and his act may be justified,

under the law of self-defense, although it might afterwards turn out that no felony was, in fact, contemplated, but the only design was to frighten the persons in such dwelling." (quoting *Foster v. Shepherd*, 258 Ill. 164)). Mr. Smith's firing of his gun was to scare away intruders. That action was reasonable under state law.

4.   As with Mr. Smith's response to the prior objection, Mr. Smith is entitled to these instructions as those instructions would be available to him under state law. *See State v. Couch*, 52 N.M. 127 (1946) (finding an instruction for defense of habitation appropriate where a defendant fired shots at a car after the car had driven by his house, thrown rocks at it, and was driving away when he fired the shots). Mr. Smith's due process rights are violated by the government's insistence that exclusively federal law applies to this situation. Mr. Smith lives on land over which both the federal and state government have jurisdiction. As such, Mr. Smith is entitled to the same defenses as anyone else residing in the State of New Mexico. Depriving Mr. Smith of the defense of habitation that would otherwise be available to him under state law deprives him of his right to

due process; especially given that the availability of this defense is contingent on the Indian or non-Indian status of the victim, a status that is impossible for a person in Mr. Smith's position to ascertain.

5. At one o'clock in the morning someone invaded Mr. Smith's property, attempted to break into his trailer, and woke him up. When he stepped onto his back porch, the intruder stepped toward him. Mr. Smith was not out on the streets of Espanola looking for trouble; he was provoked by the actions of an intruder on his property. In response to this, he fired warning shots to scare that person away from his property. Mr. Smith did not believe he was shooting at or towards someone. Instead, mistakenly believed that the intruder had left his property when he fired toward his woodpile. This action was an honest error of judgment, precipitated by Jane Doe's intruding on Mr. Smith's property under the cover of darkness at 1:00 in the morning. Mr. Smith is entitled to his proposed jury instructions.

The defense, in reviewing the evidence, believes that the instruction proposed in 7b will likely best fit the evidence. Mr. Smith was mistaken

about the facts when he fired his gun. Mr. Smith believed the intruder had left his property. Acting on this mistaken belief, Mr. Smith fired his gun at a woodpile to scare the intruder.

The government, in moving to strike this instruction, impermissibly seeks to truncate Mr. Smith's defense. The government argues that Mr. Smith is not entitled to this instruction because he fired his gun. This is entirely wrong, as *Lesina* makes clear. Mr. Smith has never contended that he accidentally fired his gun. Rather, he has consistently said that he believed the intruder had left his property when he fired his gun toward the woodpile. Mr. Smith, in short, was mistaken about the facts as he perceived them. In this, Mr. Smith made an "honest error of judgment" brought about by the actions of an intruder on his property at one o'clock in the morning.

The government's efforts seek to usurp the function of the jury and deprive Mr. Smith of his right to a jury trial and right to due process under the Sixth and Fifth Amendments. It is solely for the jury to weigh Mr. Smith's statement that he believed the intruder had left the property before

again firing his gun. This, ultimately, is a question for the jury.

Accordingly, the jury must be instructed that if Mr. Smith's actions were born of simple negligence or an honest error of judgment, then it must find Mr. Smith not guilty.

WHEREFORE, Mr. Smith requests that the Court overrule the government's objections to his proposed instructions.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas Blvd., NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(5050 346-2494 Fax
aric_elsenheimer@fd.org

_____
ARIC G. ELSENHEIMER, AFPD
Attorney for Defendant

7