IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　No.　CR 1:18-03495-001 JCH

DOUGLAS D. SMITH,

    Defendant.

### DEFENDANT'S MOTION FOR DISCLOSURE OF EXCULPATORY MATERIAL

Mr. Douglas Smith, through Assistant Federal Public Defenders Aric G. Elsenheimer and Amanda R. Lavin, respectfully moves this Court to compel disclosure of material pursuant to Fed. R. Crim. P. 16(a)(1)(E) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Mr. Smith files this motion with the court because the defense has identified material that the government has failed to disclose pursuant to Rule 16 of the Federal Rules of Criminal Procedure; (ii) the Due Process Clause of the Fifth Amendment; and (iii)

1

the Jencks Act." *United States v. Baca*, No. CR 16-1613 JB, 2019 WL 2649835, at *34 (D.N.M. June 27, 2019).

## Introduction

The defense has located through its own investigation several lapel videos that were not disclosed by the government. Those lapel videos were worn by members of the Espanola Police department during their investigation of this case and were never disclosed to the Defense by the Government.

This raises the possibility that other evidence, material to the defense and potentially exculpatory, remains outstanding. Given the nature of the FBI's investigation in this case, and what appears to be a lack of coordination and communication between the FBI and local law enforcement, there is a risk that exculpatory material exists and has not been disclosed. The defense demands any outstanding *Giglio/Brady* material. Given the likelihood that discoverable material remains outstanding, the defense seeks an order directing the government to locate and disclose any and all material obtained in the course of the investigation

of this case that has not already been disclosed, including but not limited to the following:

1. Any outstanding 302's;

2. Any outstanding interview notes with witnesses and potential witnesses;

3. Any and all lapel videos and/or audio recordings from the time of the incident and any and all subsequent investigations;

4. Any and all undisclosed investigative notes and/or FBI 302's of interviews with Ercilia Trujillo;

5. Any and all surveillance footage obtained during the course of the investigation into this case whether by the FBI or local law enforcement, including the New Mexico State Police, the Espanola Police Department, or the Rio Arriba County Sheriff's office, or any other law enforcement agency;

6. Any and all communications between the United States Attorney's office (including the FBI) and local law enforcement.

**Facts**

After experiencing prior break-ins, Mr. Smith heard multiple motion detector sounds coming from outside his home. He inspected and saw an individual trying to break into a trailer on his property. The intruder stepped toward Mr. Smith. Mr. Smith, in fear of the intruder, fired a warning shot to scare the intruder away. The person ran off. He did not know if the person was armed. After he thought the intruder had left, Mr. Smith fired in the direction of a wood-pile.

Shortly after, the Defendant inspected further beyond his back porch and noticed the decedent. The Defendant did not see any other person. Ercelia Trujillo came out of her apartment and saw the decedent. Mr. Smith called the police.

Officer Rael arrived on scene, took the Defendant into investigative custody and checked the property and the inside of Mr. Smith's home for anyone else.

Detective Abeyta, appears to have taken photographs, most of which were taken in the dark. Detective Abeyta collected the gun used, extra

rounds, and four spent casings.  A report was authored.  *See Bates # 734-739*.  The government only provided one lapel video on June 6, 2018. This video depicts the un-Mirandized interview of Defendant Smith.

FBI Agents took this case on May 8, 2021.  Detective Abeyta turned over evidence to Special Agent Travis Taylor on May 18, 2018.  *See BN 13*. Lapel video of Detective Abeyta's interview with Ercilia Trujillo on or about May 5, 2018 does not appear to have been included.

The government did not turn over this video at any time.

The government also was aware the NMSP Officers had video of the incident.  *See BN 788*.

## Discussion

A defendant must make a prima facie showing of materiality before he is entitled to obtain requested discovery. See *United States v. Simpson*, 845 F.3d 1039, 1056 (10th Cir. 2017). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the government is in possession of information helpful to the defense." *United*

5

*States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016). The term "defense" means an argument in response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant committed the crime charged. *See United States v. Armstrong*, 517 U.S. 456, 462 (1996). To be material, it is not enough that the evidence sought "bears some abstract, logical relationship to the issues in the case … [r]ather a showing of materiality requires some indication that pretrial disclosure of the information sought would have enabled the defendant to significantly alter the quantum of proof in his favor." *United States v. Goris*, 876 F.3d 40, 44-45 (1st Cir. 2017). Establishing *prima facie* materiality is not a heavy burden; evidence is material when there is a strong indication that it "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotations omitted). Nonetheless, the threshold showing of materiality is essential because ordering the government to produce discovery absent

such a showing is inconsistent with Rule 16. *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).

The Supreme Court recognized the obligation to disclose even in the absence of a defense request. *United States v. Agurs*, 427 U.S. 97, 107 (1976). Further, in *Giglio v. United States*, 405 U.S. 150, 154 (1972), the Supreme Court extended the prosecution's *Brady* obligation to include the disclosure of evidence affecting the credibility of a witness. Such information and evidence is "material" under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.)). The Supreme Court continues to reaffirm that prosecutors have an "affirmative duty to disclose evidence favorable to a defendant," *Kyles,* 514 U.S. at 432, and that "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *Agurs,* 427 U.S. at 108, *Kyles,* 514 U.S. at 439.

## Specific Requests

1. Any outstanding 302's – Counsel believes there are remaining 302's which reflect the government's effort to find a second culprit;

2. Any outstanding interview notes with witnesses and potential witnesses. Counsel has learned that 302's are not complete representations of interviews. In some reports, there are missing information that was included in the actual interview;

3. Any and all lapel videos from the time of the incident and any and all subsequent investigations.

4. Any and all investigative notes and/or FBI 302's of interviews with Ercilia Trujillo. Based on a review of the material in this case, it appears that the FBI met with Ms. Trujillo at least once prior to May 18, 2018. The defense does not believe that it has any material related to any FBI interviews with Ms. Trujillo prior to May 18, 2018.

5. Any and all surveillance footage obtained during the course of the investigation into this case whether by the FBI or local law

enforcement, including the New Mexico State Police, the Espanola Police Department, or the Rio Arriba County Sheriff's office.

6. Any and all communications between the United States Attorney's office (including the FBI) and local law enforcement. Given that material remains outstanding, including lapel video taken by the Espanola Police Department, the Court should require production of communications to determine what information was shared between Espanola Police and the FBI.

WHEREFORE, Mr. Smith, by and through undersigned counsel, respectfully requests that this Court enter an order requiring the government to identify any outstanding discoverable material and, if identified, to be produced to the defense immediately.

Respectfully Submitted,

**FEDERAL PUBLIC DEFENDER**
111 Lomas Blvd., NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494 Fax
aric_elsenheimer@fd.org
amanda_lavin@fd.org

*Electronically filed June 7, 2021*
/s/ Aric G. Elsenheimer
/s/ Amanda R. Lavin
Assistant Federal Public Defenders