IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cr. No. 18-03495 JCH |
| | ) |
| **DOUGLAS D. SMITH**, | ) |
| | ) |
| Defendant. | ) |

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR DISCLOSURE OF EXCULPATORY MATERIAL (DOC. 173)

The United States hereby responds to Defendant's Motion for Disclosure of Exculpatory Material. Doc. 173. Therein, Defendant asks the Court to compel the United States to disclose information that he deems to qualify as *Brady* material.

The United States learned in Defendant's motion filed on June 7, 2021, that defense had obtained additional lapel footage from the Española Police Department (EPD). Doc. 173 at 2. Upon learning this, counsel for the United States immediately reached out to defense on June 7, 2021 to ask for specific information relating to their request. Also on June 7, 2021, the United States reached out to the FBI to ascertain what additional materials EPD had not provided to the FBI in its May 18, 2018 disclosure. The EPD evidence technician located additional lapel footage, which was disclosed upon receipt to defense on June 8, 2021. Bates 2690-2694. The United States has already and will continue to comply with its obligation to produce *Brady* material.

To date, the United States has disclosed approximately 2694 pages of discovery and numerous media files, which include Defendant's interview with the FBI, audio dispatch call - 1805E0040.wav, audio file entitled ERCILIA - 180518_0013.WAV (witness interview), audio of

transport to SF Jail - 180508_0009.WAV (interview of Defendant during transport to Santa Fe County Detention Center), audio of transport to ct - 180508_0009.WAV (interview of Defendant during transport to District Court), a DVD entitled "Defendant Interview by Espanola PD", a DVD entitled "Espanola PD Lapel Cam Video", a DVD containing four audiotaped interviews of Isela Mondragon, Martha Trujillo, Yvonne Naranjo, Ray Sandoval, an audio recording of Ashley Sanchez's interview, an audio-recorded interview of Derek Delacruz and Daniel Smith, a copy of the video containing aerial surveillance footage recorded on August 30, 2019, nine panorama videos of Defendant's property, a CD containing ERT Survey Data (total station scans), and most recently lapel camera videos obtained from Española Police Department (file 012128.mp4 was previously produced on June 6, 2018).

## LAW

In *Brady v. Maryland*, the Supreme Court held that due process requires the prosecution to disclose evidence favorable to a defendant when such evidence is material to guilt or punishment. *Brady*, 373 U.S. 83, 87 (1963). *Brady*'s favorability and materiality standards are stringent. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also United States v. Bencs,* 28 F.3d 555, 560 (6th Cir. 1994) ("materiality" pertains to the issue of guilt or innocence, not to the defendant's ability to prepare for trial). In discussing the limitations of *Brady*, the Supreme Court explained the following:

> If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice. Whether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely

2

does not demand that much. . . . [Prosecutors] are under no duty to report sua sponte to the defendant all that they learn about the case and about their witnesses. . . . [T]here is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.

*United States v. Agurs*, 427 U.S. 97, 109-10 (1976) (internal citations and quotations omitted).

Significantly, only expressly and obviously exculpatory material falls under the rubric of *Brady*. As the Tenth Circuit has noted:

The Government has no obligation to disclose possible theories of the defense to a defendant. If a statement does not contain any expressly exculpatory material, the Government need not produce that statement to the defense. To hold otherwise would impose an insuperable burden on the Government to determine what facially non-exculpatory evidence might possibly be favorable to the accused by inferential reasoning. We are confident that the Supreme Court did not intend the *Brady* holding to sweep so broadly.

*United States v. Comosona,* 848 F.2d 1110, 1115 (10th Cir. 1988); *see also United States v. Buchanan,* 891 F.2d 1436, 1441 (10th Cir. 1989). The Court has further cautioned against a whimsical application of *Brady*, noting "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." *United States v. Fleming*, 19 F.3d 1325, 1331 (10th Cir. 1994).

With regard to "impeachment" evidence, *Brady* does not require the government to provide all information that may impeach a witness' testimony, but instead requires that the impeachment information, like all *Brady* information, be material to the question of a defendant's guilt. *Bagley,* 473 U.S. at 676; *see also United States v. Thompson*, 606 F. App'x 920, 923 (10th Cir. 2015); *Buchanan,* 891 F.2d at 1443-44. In other words, the evidence must be substantially impeaching "so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *Bagley,* 473 U.S. at 676; *see also Kyles v. Whitley,* 514 U.S.

3

419, 434 (1995) (must put whole case in such a different light as to undermine confidence in the verdict). Moreover, if the impeachment evidence is merely cumulative, or a witness is but a minor part of the government's evidence, *Brady* does not require its disclosure. *See Thompson*, 606 F. App'x at 923. Furthermore, the Tenth Circuit has noted that "the Due Process Clause does not require the government to disclose before trial the names of its witnesses, just so the defense can have sufficient time to investigate their backgrounds for impeachment information." *United States v. Ashley*, 274 F. App'x 693, 697 (10th Cir. 2008).

      Notably, *Brady* is not a pretrial discovery rule. *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011); *see also United States v. Kendall*, 766 F.2d 1426, 1440 (10th Cir. 1985) (citing cases for the proposition that *Brady* does not create any new pretrial discovery privileges). Courts addressing the issue have uniformly held that *Brady* neither requires the United States to perform discovery on behalf of a defendant nor authorizes a defendant to attempt to use *Brady* as an investigative tool. *See, e.g., United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1993) ("Certainly, *Brady* does not require the government to conduct discovery on behalf of the defendant."); *United States v. Webb*, 651 F. App'x 740, 744 (10th Cir. 2016) (holding that *Brady* does not create a requirement that the government "disclose information it is unaware of and that is in the possession of a separate federal agency not involved in the prosecution or investigation of the present case"); *United States v. Morris*, 957 F.2d 1391, 1402-03 (7th Cir. 1992) (defense motion for disclosure of FBI 302 reports on general and unsupported assertion that *Brady* entitled them to have the reports properly denied by trial court); *United States v. Williams-Davis*, 90 F.3d 490, 513 (D.C. Cir. 1996); *United States v. Romo*, 914 F.2d 889, 898-99 (7th Cir. 1990) (defense motion to require government to make inquiries of local police involved in investigation lacked any indication that exculpatory information would be found).

4

Ultimately, it is the prosecutor's role to determine what must be disclosed under *Brady* and its progeny, with the accompanying risk of reversal if a mistake is made. *See United States v. Presser*, 844 F.2d 1275, 1281-82 (6th Cir. 1988) (citations omitted) ("[T]he government typically is the sole judge of what evidence in its possession is subject to disclosure. If it fails to comply adequately with a discovery order requiring it to disclose *Brady* material, it acts at its own peril."); *Banks v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995). That the duty to disclose rests on the prosecution reflects the recognition that the Constitution "does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government.'" *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) (quoting *Jencks v. United States*, 353 U.S. 657, 667 (1957)); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) (explaining that a defendant's mere allegation that the requested information might be material does not entitle him to an unsupervised search of the government's files); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (noting that there "is no general constitutional right to discovery in a criminal case").

## ANALYSIS

The United States is aware of its obligation under *Brady* and its progeny and will continue to comply. The United States is not aware of any exculpatory information in the case, and certainly none that it has not disclosed. Absent a more specific, non-speculative request for material that actually constitutes *Brady*, the United States requests that the Court rely on the United States' representations that it has and will continue to comply with its *Brady* obligations. *See United States v. Fitzpatrick*, 2018 WL 1061434, at *4 (D.N.M. Feb. 23, 2018) ("The Court should rely on the government's representations of its compliance with *Brady* unless the defendant shows cause to question them and the materiality of the evidence sought."); *United*

*States v. Sneed,* 34 F.3d 1570, 1580–81 (10th Cir. 1994) (holding that mere speculation that tapes of conversations were exculpatory was insufficient to require further court inquiry where government denied existence of exculpatory tapes).

In addition to these general assurances of compliance, the United States provides the following responses to each of discovery requests listed in Defendant's motion.

Defendant's "Specific Requests"

|   | Material Requested | United States' Response |
|---|---|---|
| 1 | Any outstanding 302's – Counsel believes there are remaining 302's which reflect the government's effort to find a second culprit. | This request is unclear. To the extent this request refers to evidence that formed the basis for further investigation by law enforcement, the United States contends that its prior disclosures satisfy this request. |
| 2 | Any outstanding interview notes with witnesses and potential witnesses. Counsel has learned that 302's are not complete representations of interviews. In some reports, there are missing information that was included in the actual interview. | This request is also unclear. 302 reports are often summaries. To the extent this request calls for impeachment or *Jencks* Act material, the United States will produce such material at or before the time provided by law. |
| 3 | Any and all lapel videos from the time of the incident and any and all subsequent investigations. | The United States has disclosed all lapel camera footage in its possession. The United States is unaware of any additional material responsive to this request. |
| 4 | Any and all investigative notes and/or FBI 302's of interviews with Ercilia Trujillo. Based on a review of the material in this case, it appears that the FBI met with Ms. Trujillo at least once prior to May 18, 2018. The defense does not believe that it has any material related to any FBI interviews with Ms. Trujillo prior to May 18, 2018. | The United States has already disclosed all discoverable material in its possession within this category. |
| 5 | Any and all surveillance footage obtained during the course of the investigation into this case whether by the FBI or local law enforcement, including the New Mexico State Police, the Española Police Department, or the Rio Arriba County Sheriff's Office. | The United States has disclosed numerous photographs of the crime scene. The United States is unaware of any additional material responsive to this request. |

| 6 | Any and all communications between the United States Attorney's office (including the FBI) and local law enforcement. Given that material remains outstanding, including lapel video taken by the Española Police Department, the Court should require production of communications to determine what information was shared between Española Police and the FBI. | To the extent this request calls for discoverable material, the United States' prior productions have satisfied this request. To the extent this request calls for impeachment or *Jencks* Act material, the United States has produced and will continue to produce such material at or before the time provided by law. |

## CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court issue an order summarily denying Defendant's motion for disclosure of exculpatory information as overbroad, non-specific, and moot.

                                                Respectfully submitted,

                                                FRED J. FEDERICI
                                                Acting United States Attorney

                                                *Filed electronically on 06/09/21*
                                                NOVALINE D. WILSON
                                                KYLE T. NAYBACK
                                                Assistant United States Attorneys
                                                Post Office Box 607
                                                Albuquerque, New Mexico   87103
                                                (505) 224-1419

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause a copy of this filing to be sent to counsel for Defendant.

_____*/s/*_____
NOVALINE D. WILSON
Assistant United States Attorney

7