IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § § | |
| Plaintiff, | | |
| v. | § § § | No.  CR 1:18-03495-001 JCH |
| DOUGLAS D. SMITH, | § § § | |
| Defendant. | § | |

**Mr. Smith's objections to the presentence report**

Mr. Douglas Smith, by and through undersigned counsel, Assistant Federal Public Defenders Aric G. Elsenheimer and Amanda Lavin, submits the following objections to the presentence report.

**1.   Objection to description of count of conviction and base offense level.**

On the cover page, the PSR describes the offense in count 1 as voluntary manslaughter. That is incorrect. Mr. Smith was convicted following a jury trial of involuntary manslaughter. Similarly, in ¶ 20, the PSR lists count one as involving "voluntary manslaughter." That reference

should be to involuntary manslaughter. Similarly, ¶ 53 refers to a statutory maximum term of imprisonment of 15 years. That should be changed to reflect that involuntary manslaughter carries a maximum term of imprisonment of eight years.

**2.    Objection to release status.**

On the cover page, under the description "release status" the PSR recounts that Mr. Smith was arrested on May 8, 2018. This is incorrect. Mr. Smith was arrested in the early morning hours of May 5, 2018 by Detective Abeyta of the Espanola Police Department. He remained in state custody until his arrest by federal authorities on May 8. The PSR should be updated to reflect the additional three days of custody and reflect that Mr. Smith was in custody for a total of five days.

**3.    Objection to base offense level.**

The PSR assesses a base offense level of 18. That calculation is incorrect. Under 2A1.4—the guideline applicable to involuntary manslaughter—the base offense is 12 if "the offense involved criminally negligent conduct." The base offense level is 18 only if the offense involved

2

"reckless conduct." Mr. Smith was convicted of involuntary manslaughter. The jury instructions, given to the jury in the case, required as an element the finding "Jane Doe was killed while the defendant was committing a lawful act in an unlawful manner, or without due caution and circumspection, which act might produce death." (Doc. 201 at 8). Based on the jury's findings at trial, Mr. Smith acted without due caution and circumspection. Such an action is not recklessness as the law understands that term. Accordingly, Mr. Smith objects to the base offense level of 18 in ¶ 22 of the PSR. That base offense level should be 12.

## 4. Objection to finding that Mr. Smith has not accepted responsibility.

After firing shots outside of his house upon encountering an intruder in the early morning hours of May 5, 2018, Mr. Smith called 911 and told the dispatch officer that he had shot someone. When officer Rael approached him and told him to put up his hands and get into the police car, he did so. He then told Officer Rael what happened. Later that morning, he spoke with Detective Abeyta and recounted, in detail, exactly

what had happened in the early morning hours. Several days later he spoke with the FBI. He told them, almost to the letter, what he told detective Abeyta. During his trial, Mr. Smith testified and recounted for the jury what happened.

Mr. Smith has accepted responsibility for what happened and submitted a statement to the probation office accepting responsibility for his actions. He should receive a reduction in his offense level for his acceptance of responsibility.

**5.    Objection to offense conduct description.**

Mr. Smith objects to numerous characterizations in the offense conduct section of the PSR.

Mr. Smith objects to the first sentence of ¶ 9. Mr. Smith did not step onto his porch and see the shadow of a person staring at him from the door of his mother's camper trailer. Rather, when he stepped onto his back porch, he saw an intruder at the door of his trailer trying to break in. When the door closed behind Mr. Smith, the person, presumably alerted to

Mr. Smith's presence, turned around and crouched down in the bushes, "eyeballing" Mr. Smith.

In ¶ 9 Mr. Smith objects to the statement that "Smith said he shot to miss, but he hit the edge of the camper trailer, leaving a bullet impact point." This statement mischaracterizes the evidence. The "bullet impact point" on the edge of the camper trailer confirms Mr. Smith's statement that he "shot to miss." The "bullet impact point" on the edge of the camper trailer is approximately 12 feet from where the intruder in Mr. Smith's back yard was standing. The objectionable statement should be changed to read: *"**Mr. Smith shot to miss the intruder, aimed to the left of the intruder, and hit the edge of the camper trailer, which is confirmed by the bullet impact point on the edge of the camper trailer."***

Mr. Smith also objects to the statement that "He saw the shadow immediately take off running and he did not stop shooting." There is no evidence to support this. Mr. Smith testified that he fired once, the person took off running, and he waited until he thought the person had left before he fired again. Additionally, Mr. Smith never, as the PSR inaccurately

5

recounts, continue to pull the trigger three more times in the direction of the individual." Nor did he continue to "shoot again and again in a counterclockwise direction." Paragraph 9, which appears to have been written by the government and adopted by the PSR writer, is a reconstituted version of the government's criminal complaint and theory of the facts since the inception of this case. That theory, supporting the charge of second-degree murder, was rejected by the jury in place of the finding that Mr. Smith acted without due caution and circumspection---not maliciously.

    Mr. Smith also objects to ¶ 12 in its entirety. The Motel was not "open to pedestrian traffic." There is no factual basis for this finding. Mr. Smith's property was not a working or operating motel. Not one person in Espanola or driving on the Taos highway would believe that Mr. Smith's hotel was an operating motel. There were no signs indicating it was open for business. The area beyond the parking lot was unlit and would not suggest to anyone that it was "open to pedestrian traffic."

Mr. Smith objects to ¶ 14 and the statement that "Mr. Smith explained to law enforcement that when he first saw M.G. she made no moves towards him, nor did he see anything in her hands." This statement, again a reconstituted version of the government's theory, is flatly wrong. Mr. Smith, in his statement to law enforcement, said that he could not see if anything was in the intruder's hands and was afraid that the intruder was going to start "blasting" away at him.

Mr. Smith also objects to the statement in ¶ 15 that Mr. Smith "recklessly fired four shots at M.G." Mr. Smith's conduct, based on the jury's findings, was not reckless. Mr. Smith, scared by an intruder on his property at 1:00 in the morning, fired his gun out of fear. That act, according to the jury's finding, was done without due caution and circumspection. Paragraph 15 should be corrected to accurately reflect the jury's findings.

*Wherefore*, Mr. Smith asks that the Court sustain his objections to the PSR as stated above.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas Blvd., NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(5050 346-2494 Fax
aric_elsenheimer@fd.org

Electronically filed on 8/16/22
ARIC G. ELSENHEIMER, AFPD
Attorney for Defendant