IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § § | |
| Plaintiff, | | |
| v. | § § § § § § § | No.   CR 1:18-03495-001 JCH |
| DOUGLAS D. SMITH, | | |
| Defendant. | | |

**Mr. Smith's response to the government's sentencing memorandum and objections to the presentence report**

Mr. Douglas Smith, by and through undersigned counsel, Assistant Federal Public Defender Aric G. Elsenheimer and Amanda R. Lavin, submits the following response to the government's sentencing memorandum and objection to the PSR.   (Doc. 216)

**1.**     Mr. Smith did not obstruct justice. The government seeks a two-level enhancement based on the claim that Mr. Smith obstructed justice by committing perjury in his testimony. Mr. Smith told his neighbor, Ercilia, that he had shot someone, called 911, gave three full statements to law enforcement, and testified at his trial. In each of these statements he

said that he shot an intruder on his property. Not once has Mr. Smith deviated from that statement. In fact, in his trial testimony he said "I was firing faster than I had ever fired before, I swear, when I pulled one time I heard two shots." (Doc. 209-1, page 54 at line 7-8). That is not the testimony of someone who is obstructing justice. The government claims that Mr. Smith's testimony that he shot in the direction of the "woodpile" on his property somehow shows that Mr. Smith obstructed justice. In his interview with Detective Abeyta, Mr. Smith explained that he "shot to miss the trailer . . . way over to the side of her." Detective Abeyta said, "so towards, like, the woods and stuff" to which Mr. Smith replied "yeah." Also, there was actually a woodpile on Mr. Smith's property. The woodpile, contrary to the government's insinuation of perjury, was not a figment of Mr. Smith's imagination. It was and is an actual woodpile. And it was located in the southwest side of Mr. Smith's property. A location immediately in front of the coyote fence and directly behind the clump of trees where Mr. Smith indicated, by drawing lines for both Detective

Abeyta and the FBI showing the direction in which he fired his gun.[1] Mr. Smith did not obstruct justice. He accepted responsibility for his actions. He called 911. He spoke three times with law enforcement. He testified before the jury. The jury accepted Mr. Smith's testimony as evidence that he acted without due caution and circumspection and convicted him of involuntary manslaughter. He should receive a reduction of two levels for acceptance of responsibility. An enhancement for obstruction of justice has no support in the facts or the law.

2.      There is no legal support for the government's request for an upward variance. The government claims that Mr. Smith wielded "a loaded firearm with extraordinary recklessness." That is not what the jury found. Rather, the jury found that Mr. Smith acted without the caution and circumspection that the law requires. That is not extraordinary recklessness.

3.      The case the government relies on for its request for a sentence of sixty months—*United States v. Martinez-Armestica*—involved two violent

---

[1] Ironically, the government's "model" of Mr. Smith's property omits the woodpile that very clearly sits on Mr. Smith's property, and has since May of 2018.

carjackings, a prior crime that also involved a firearm, and the judge finding that the defendant was "possibly a very dangerous person to the community." None of those facts are present in Mr. Smith's case. He is not a dangerous person, has no criminal history, and fired his .22 pistol while under the influence of fear, in an attempt to scare someone away. He told law enforcement and the jury that he did not shoot to kill.

4. The government also relies on *United States v. Smart*, 518 F.3d 800, 810 (10th Cir. 2008) to support a variance. *Smart* involved a downward variance in a case involving inducing a minor to engage in sexually explicit conduct and has no application to Mr. Smith's case. Similarly inapplicable is the government's reliance on *United States v. Irey*, 612 F.3d 1160, 1227 (11th Cir. 2010) for the proposition that the goal of specific deterrence is to protect the government from further criminal activity of the wrongdoer. *Irey* involved a defendant who was a heinous serial predator of prepubescent children and, while it does stand for the proposition that there are some people who should be imprisoned to protect the public, it

does not, in any way, lend support to the argument that Mr. Smith is one of those people.

**5.** There is no legal or factual support for an upward departure. As its legal basis for such an argument, the government relies on *United States v. Peeples*, 879 F.3d 282, 288 (8th Cir. 2018) a case involving a conviction for felon in possession of a firearm where the court imposed a four level upward departure because, in addition to possessing a gun, the defendant also fired it into the bedroom of his downstairs neighbor at 1:00 in the morning and where the Court found that the defendant targeted his neighbor's bedroom. The government similarly claims, without support, that Mr. Smith's trial testimony was inconsistent with his prior statements. This is factually inaccurate. Mr. Smith testified that his intention, when carrying a pistol in his backyard, was to cock the pistol and fire it into the ground to scare people, in the event he encountered someone. Mr. Smith never said that is what he did when he confronted an intruder on May 5. Always, from his first call to 911 on through his testimony at trial, Mr. Smith consistently said that he shot to the left of the trailer. There is simply

no factual support for an upward departure in Mr. Smith's case, a case where he confronted an intruder on his property in the middle of the night.

**6.** Yet the government glosses over the criminal conduct of M.G., her criminal history, and her attempting to break into a trailer in the middle of the night and places the entirety of the blame on Mr. Smith. The government tries to muddle these facts by claiming that Mr. Smith "was unbelievably reckless and dangerous." But that won't wash. The jury found that Mr. Smith acted carelessly and without the caution the law requires. But he was not "unbelievably reckless and dangerous." He was sleeping when M.G. intruded onto his property under the cover of darkness and attempted to break into his trailer. This case is a tragic situation precipitated by a trespassing in the middle of the night under the cover of darkness. Mr. Smith is deeply sorry for what happened but his actions were not malicious and were born of the fear one feels when confronted by an intruder in the middle of the night.

7

        Respectfully submitted,

        FEDERAL PUBLIC DEFENDER
        111 Lomas Blvd., NW, Suite 501
        Albuquerque, NM 87102
        (505) 346-2489
        (5050 346-2494 Fax
        aric_elsenheimer@fd.org
        amanda_lavin@fd.org

        */s/ Electronically filed on 9/8/22*
        ARIC G. ELSENHEIMER, AFPD
        AMANDA R. LAVIN, AFPD
        Attorney for Defendant