1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3

4   UNITED STATES OF AMERICA

5   vs.                        No. 1:18-CR-3495-JCH

6   DOUGLAS SMITH

7

8

9            TRANSCRIPT OF PROCEEDINGS

10             SENTENCING HEARING

11             November 10, 2022

12

13   BEFORE:   HONORABLE JUDGE JUDITH C. HERRERA
                UNITED STATES DISTRICT JUDGE
14

15

16

17     Proceedings reported by stenotype.

18     Transcript produced by computer-aided

19   transcription.

20

21

22

23

24

25

```
1    A P P E A R A N C E S:

2    FOR THE PLAINTIFF:

3              OFFICE OF THE U.S. ATTORNEY
               P.O. Box 607
4              Albuquerque, New Mexico  87103
               505-346-7274
5              BY:  NOVALINE WILSON
               novaline.wilson@usdoj.gov
6                  KYLE NAYBACK
               kyle.nayback@usdoj.gov
7

8    FOR THE DEFENDANT:

9              OFFICE OF THE PUBLIC DEFENDER
               111 Lomas Boulevard NW, Suite 501
10             Albuquerque, New Mexico  87102-2373
               505-346-2489
11             BY:  ARIC GRANT ELSENHEIMER
               aric_elsenheimer@fd.org
12                 AMANDA LAVIN
               amanda_lavin@fd.org
13

14                     I N D E X

15                                        PAGE:

16   Certificate of Reporter                 35

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Good afternoon.  We will go on

2     the record in USA versus Douglas Smith, Case

3     Number CR-18-3495.

4          And appearances, please, for the record.

5          MS. WILSON:  Good afternoon, Your Honor,

6     Novaline Wilson and with me at counsel table is Kyle

7     Nayback on behalf of the United States.

8          THE COURT:  Good afternoon.

9          MR. ELSENHEIMER:  Good afternoon,

10    Your Honor, Aric Elsenheimer and Amanda Lavin on

11    behalf of Mr. Smith.

12         THE COURT:  Good afternoon to all of you.

13         So we are here today to conclude the

14    sentencing hearing.  We got through the entirety of

15    the hearing so I have heard argument from everybody,

16    took up the objections, did all of that.

17         The one remaining issue has to do with the

18    consideration of the defendant's age and the impact

19    that could have, would have on sentencing.  So I

20    have reviewed the materials that all of you provided

21    the Court and so at this time if you have any

22    argument you would like to make, I will hear from

23    you.

24         MR. ELSENHEIMER:  Would you like me to

25    begin, Your Honor?

```
 1              THE COURT:  If you would like to begin,
 2    you may.  Somebody has got to start, right?
 3              MR. ELSENHEIMER:  I guess I will start.
 4              THE COURT:  You may proceed.
 5              MR. ELSENHEIMER:  Thank you, Your Honor.
 6    Just to, I know you know a lot about this case.
 7              Just to recap, Mr. Smith is 72 years old.
 8    He has lived in Espanola his entire life and in the
 9    house he lived, virtually his entire life since
10    elementary school.  His age provides a variance, a
11    justification for a variance in this case.  The
12    guidelines recognize the basis for variance where
13    somebody is elderly and infirm and where home
14    confinement can be equally efficient and less costly
15    than incarceration, and that's the case that we have
16    here.
17              There are a number of examples, and I
18    refer to these in the supplement to our sentencing
19    memorandum.  But there are a number of examples
20    where Courts have recognized age as a basis for a
21    variance.  There is U.S. v. White, which is a Tenth
22    Circuit case citing defendant's advanced age, who
23    was 76 in deciding to vary downward from the
24    guidelines.
25              There is U.S. v. Anderson this is a
```

1    District Court case from Arkansas for 56-year-old

2    defendant for a variance based on age, health

3    problems, lack of criminal history and substance

4    abuse problems.

5              There is *U.S. v. Flemister*, which is a

6    Pennsylvania case noting a downward variance for

7    somebody's age and where there is an overstatement

8    of criminal history.  We don't even have an

9    overstatement of criminal history because Mr. Smith

10   has no criminal history.

11             And lastly *Bellamy*, which is a District

12   Court case in Minnesota that is a compassionate

13   release issue but granting compassionate release

14   based on somebody's age.

15             There are a host of other examples.  These

16   are four illustrative examples of how age is a basis

17   for a variance.

18             Mr. Smith is 72 years old and what we are

19   talking about here is punishment.  Rehabilitation is

20   not a sentencing at issue, really, deterrence isn't

21   at issue in this case.  Mr. Smith has been out on

22   conditions of release without incident for

23   three years, gosh, no, I'm sorry, four years now.

24   What we are talking about is punishment and there

25   are other alternatives to incarceration for

1  punishment.  There is home confinement that can

2  serve as a significant restriction on Mr. Smith's

3  liberty that can accomplish the purposes of

4  sentencing and that are justified based on his age.

5          There is two, I think, overwhelming

6  factors that support a variance because of

7  Mr. Smith's age.  First of all is what he would face

8  in the Bureau of Prisons if incarcerated.  He would

9  be going into the Bureau of Prisons with zero

10 experience in custody, zero experience in

11 understanding the routines and the culture of

12 incarceration.  And that increases his exposure and

13 vulnerability to being taken advantage of by other

14 inmates, other inmates who are far more savvy and

15 aware of the culture of prison that would be able to

16 take advantage of Mr. Smith.

17         He is somebody who has not spent much time

18 even outside of Espanola let alone in the hardened

19 confines of jail or prison.  He is not going to be

20 able to understand that world and he is going to be

21 taken advantage of.

22         We reference these in our sentencing

23 memorandum.  There are even Department of Justice

24 statistics that discuss how somebody of an advanced

25 age, and by advanced age what they are talking about

1    is over 50.  In somebody like Mr. Smith at 72 he is

2    going to be taken advantage of.  It is that

3    vulnerability his age and his complete lack of

4    experience in incarceration where he will be taken

5    advantage of and that justifies a variance from the

6    guidelines.

7            And part of that is also the fact that

8    going into a new environment is going to increase

9    significantly the stress that Mr. Smith is under.

10   We gave to the Court medical records that we just

11   recently received this week.  I gave them to the

12   Probation Office and I sent them to your CRD, but

13   what I want to point out in there is Mr. Smith has

14   tachycardia, which is a rapid heart rate.  That is

15   something that he's recently experienced.  We don't

16   know the underlying cause, but I am pretty confident

17   in saying it is because he is stressed about going

18   into prison.

19           What we know about somebody who is at an

20   advanced age is that stress and health problems

21   compound each other, once one health problem starts,

22   other health problems follow.

23           Mr. Smith going into prison is going to be

24   a significantly higher stress than others going into

25   prison who are even younger.  Because of his age,

1   less able, less resilient to the health problems he

2   is going to run into in prison.  So that increase in

3   stress is going to lead to additional health

4   problems.  I point that out along with his

5   vulnerability because it highlights the fact that he

6   is going into prison at an age where most people

7   don't move at all, most people don't make any

8   changes in their lives.  He is making a change from

9   something that he has always known, one place that

10  he has always known to something he has zero

11  familiarity with.  And that is going to increase his

12  vulnerability to others, the stress just in that

13  change in life and the fact that that stress is

14  going -- and we know that stress causes health

15  problems.  People who are stressed out in their life

16  have more health problems.  It is going to compound

17  his health problems and justifies a variance to

18  something that is punishment but less severe than

19  the punishment that somebody who is 72 is going to

20  experience in custody.

21          He has a lifetime of good behavior.  He is

22  peaceful.  He does not have a background that will

23  help him transition into a life in prison, and that

24  justifies a variance.  I understand any situation

25  where we were concerned about keeping the community

1  safe where prison might be appropriate, but that is

2  not the case that we have here.  There is no concern

3  about the community or about deterrence or about

4  protection of anybody else.

5          Mr. Smith is a peaceful, law-abiding

6  person who made a mistake and is in this situation

7  because of a terrible accident.  It wasn't, it is

8  not something that has characterized his life.  In

9  fact, it is a deep aberration from everything else

10  in his life.  What we are talking about in this case

11  is not deterrence, it is not rehabilitation, it is

12  punishment.

13          If punishment can be accomplished in a

14  less -- in something, in an alternative form such as

15  home confinement, the guidelines and, I'm sorry,

16  3553 requires the Court to consider that as an

17  alternative to punishment if it can be, if it

18  accomplishes the goals of sentencing.

19          And home confinement in this case imposes

20  punishment but it is less severe than what Mr. Smith

21  would face in prison.  It accomplishes the goals of

22  sentencing because it sends a message that this is

23  not, that those in Mr. Smith's situation have to be

24  careful but it doesn't do so in a way that is going

25  to potentially put Mr. Smith at risk of being

1    victimized by others in prison and a risk of health

2    problems that he is going to run into when he gets

3    into prison.  It is going to curtail his liberty in

4    a way that punishes him but punishes him in a way

5    that is just under 3553.

6            I think a sentence of home confinement 12

7    months, 18 months of home confinement is a

8    significant deprivation of liberty and is called for

9    by 3553 when we look at all of the factors.  What

10   led to this case, the fact that Mr. Smith was not

11   out looking for trouble, he was home in bed.  And

12   the fact that he is 72 years old with no criminal

13   history.  An absolutely aberrant situation.  He did

14   not plan on this, he did not intend this to happen.

15   It is completely aberrant and given his age and what

16   he would face if he were to go into prison, it

17   justifies a sentence to home confinement, 12 months,

18   18 months.

19           We will leave that to the Court's

20   discretion, but home confinement is punishment but

21   it is punishment that is fair and just under 3553(a)

22   that accomplishes the purposes of sentencing and it

23   is not greater than necessary.

24           And I would ask Your Honor to consider and

25   to impose a sentence of home confinement.  It is

1   fair in this case.  This is a very difficult case.

2   It is difficult for everybody involved but sending

3   Mr. Smith to prison is not the way that the

4   Sentencing Reform Act contemplates punishing

5   somebody in situations like this given their age and

6   everything that preceded that; no criminal history,

7   the facts and circumstances of this case and the

8   consequences to Mr. Smith if he goes to prison and

9   the vulnerability that he will face with others

10  there having no experience in prison and the

11  potential just stress and health consequences he

12  will face in prison.

13          Thank you.

14          THE COURT:  Thank you, Mr. Elsenheimer.

15          Ms. Wilson.

16          MS. WILSON:  Your Honor, just to address a

17  few things that defense brought up.  I realize when

18  Your Honor does sentence people to Federal prison,

19  sometimes it is people's first time to go to Federal

20  prison.

21          The fact that Mr. Smith doesn't have any

22  experience in that regard shouldn't really be a

23  consideration before this Court.  It is stressful.

24  I can only guess what that must feel like, and I am

25  sure other folks who go to prison feel that same

1  stress.  But to the extent that any health problems

2  that may arise from that, of course, the

3  United States has no objection that defendant be

4  sent to a Federal medical facility.

5         We have included a number of exhibits on

6  our response to defendant's request so the Court is

7  comfortable with what resources are available at BOP

8  specifically addressing not only his eye vision that

9  was mentioned in defendant's pleading, but also the

10  resources that are available for somebody who is an

11  older person in prison.  They have a policy, there

12  are a number of resources that we included for the

13  Court's consideration in, you know, reaching out to

14  the BOP in determining what resources they had

15  available.

16         They are aware that Mr. Smith is being

17  sentenced and that this proceeding is taking place.

18  And to the extent it would be helpful, you know, if

19  we can put something in the Court's order that he go

20  to a Federal medical facility but we can also -- BOP

21  has mentioned to me that they will be sure that that

22  facility he goes to is aware of his health

23  conditions, whatever they may be, and that he

24  receives the care that he needs.  I have been

25  reassured by BOP staff that that is something that

1  we can put in the order and that his healthcare will

2  be taken care of.

3          In response to defendant's arguments about

4  deterrence, we would argue that it isn't just

5  punishment.  There is an aspect of deterrence in

6  Mr. Smith's sentence, both general and specific.

7  The defendant, as Your Honor is aware, did admit to

8  shooting at other people on his property.  In this

9  instance, of course, it did cost Ms. Gallegos her

10 life, but, you know, there is that prior act.  We

11 are concerned and we do believe a custodial sentence

12 is appropriate.

13         The United States maintains that defendant

14 has not shown that his age or his health are

15 exceptional, arise to the level to warrant a

16 variance.  Again, the BOP is fully capable of

17 providing the defendant the care he needs and also

18 can address his concerns with vulnerability.

19         Some of the documents we included for the

20 Court include, you know, folks that can help people

21 who are disabled in custody.  And, again, you know,

22 if the Court has any questions about any of the

23 exhibits the United States provided, we would rely

24 on our pleadings for our response to defendant's

25 expert about his concerns about defendant's age and

1  vulnerability.  We just believe that the BOP is

2  capable of taking care of Mr. Smith.  They take care

3  of people with far worse conditions and people who

4  are elderly on a daily basis.

5          And with the information that we provided

6  for the Court, we hope that you have a good

7  understanding of what is there and that you would be

8  comfortable sentencing him to a custodial sentence.

9          Happy to answer any questions you might

10 have, Your Honor.

11         THE COURT:  Thank you, Ms. Wilson.

12         Anything further?

13         MR. ELSENHEIMER:  Two things in response

14 very quickly, Your Honor.  First of all just to be

15 clear, our argument isn't that the BOP doesn't have

16 the capacity to take care of these things.  Our

17 argument and the justification based on Mr. Smith's

18 age is that Mr. Smith going to the Bureau of

19 Prisons, given his age complete lack of criminal

20 history, total inexperience with the prison will

21 lead to health problems and problems to him based on

22 his vulnerability to victimization.

23         It is not that his conditions as they are

24 can't be addressed by the Bureau of Prisons, it is

25 that he is going to have adverse health

1  consequences, adverse life consequences by going

2  into incarceration at his age.

3         The second thing I want to point out is

4  that -- the second thing I want to mention about

5  what the Government just said -- I am drawing a

6  blank on it right now.

7         THE COURT:  Talked about first time,

8  everybody has a first time, health, deterrence is an

9  issue.  BOP, exhibits to their response.  Nothing?

10 Not jogging it?

11        MR. ELSENHEIMER:  Well, I guess it was

12 just one thing I had to point out, which is that --

13 I want to make sure.  Sure, the BOP can handle what

14 he has right now but he will have adverse

15 consequences to his health and to his lifestyle by

16 going into the Bureau of Prisons.

17        And by lifestyle I mean his victimization

18 by others who are far more savvy.  Folks who have

19 spent their life in prison are extraordinarily

20 savvy.  You have to be on constant guard with them.

21        Mr. Smith has none of that.  He is not

22 experienced in any way.  He is not somebody who has

23 spent his life traveling and understands.  He spent

24 his life living in his home in Espanola and that

25 justifies a variance in this case.

1          And age, oh, the last thing, I know what I
2    wanted to say.  The Government there is exceptional
3    reasons that we need.  Age itself is identified in
4    3553 as a basis that the Court has to consider.  It
5    is identified in the guidelines as a basis.  It is
6    identified in case law as a basis for a variance,
7    age itself.
8          It is inherently a possible basis for a
9    variance, particularly in a situation like
10   Mr. Smith's.  We don't have to show an analysis of
11   exceptional circumstances or reasons, it is the age
12   alone and the consequences based on someone's age.
13   That is the justification for a variance.
14         THE COURT:  I am looking at 3553 to see
15   where age specifically is.
16         MR. ELSENHEIMER:  It is history and
17   characteristics, Your Honor.
18         THE COURT:  Well, history and
19   characteristics, yes, I agree with you but I don't
20   see age.
21         All right.  Anything else?
22         MR. ELSENHEIMER:  No.
23         THE COURT:  Well, I have reviewed all of
24   the material that you-all have supplied on this
25   issue of age and of variance.  I have, I told you

1    when we were together last time that I was inclined

2    to go with a guideline sentence at the low end.

3              As the hearing progressed I allowed the

4    defense to submit any other materials or argument on

5    the issue of age because, as I pointed out at our

6    last hearing, while age was mentioned by the defense

7    in the sentencing memo, there was really nothing

8    that was particularly specific about age and so now

9    the defense has provided more information.

10             Despite that information, I continue to

11   believe that a custodial sentence is appropriate at

12   the low end of the guidelines.  I looked at the age

13   issue very carefully because I can certainly

14   understand that a custodial sentence for someone of,

15   you know, a lot of ages, including 72, would be

16   difficult and so I wanted to give every

17   consideration to the defendant's request.

18             And I did look at all the issues that were

19   identified.  I looked at the report from the expert

20   who, by the way, noted that the older population had

21   increased significantly since 2009.  I believe he

22   said 25 percent so it was quite, it was a jarring

23   number to see that the population of the older

24   inmates had grown so dramatically.

25             But anyway, I looked through all of that.

1    I looked through the materials that the Government
2    provided, and I continue to believe that the Bureau
3    of Prisons is equipped to address issues that
4    involve not only an inmate's age but also any health
5    conditions.
6         Now the only health condition that I was
7    aware of before yesterday was macular degeneration.
8    I believe that the Bureau of Prisons is equipped to
9    handle inmates who have vision issues, including
10   macular degeneration.
11        Yesterday, I received a packet of
12   materials from defense counsel regarding an
13   emergency department visit to Presbyterian, I
14   believe, and the defendant went to the emergency
15   room about a week or so after we were together last
16   time.
17        And from my review of the notes it looks
18   like the defendant had some rapid heartbeat and was
19   not, was asymptomatic at the time of the visit.  The
20   defendant indicated that he was there in part
21   because he knew of someone who had similar rapid
22   heartbeat and ultimately needed a pacemaker, so he
23   was concerned and wanted to be examined.
24        And that is -- the packet of materials is
25   fairly thick in large part because of some of the

1    testing that was done.  But I didn't see any

2    follow-up.  I am not aware of any treatment that was

3    prescribed.  All of that is to say that I agree that

4    Mr. Smith is 72 years old and I agree that he has a

5    very -- his life experience is a bit limited in the

6    sense that he has lived in Espanola almost his

7    entire life and lived in the same house for at least

8    60 years, maybe longer.  And I am, I can only

9    imagine that going to prison would be stressful for

10   him, and I understand all of that.

11           So when we talk about 3553, nature and the

12   circumstances of the offense and the history and the

13   characteristics of the defendant, you know, that is

14   3553(a)(1), so I have to look at the nature and the

15   circumstances of the offense, too.

16           Here the jury concluded that the defendant

17   recklessly shot at MG, who was on his property and

18   she was shot in the temple and she died.  So the

19   jury determined that the defendant was reckless,

20   acted without due caution and circumspection, as the

21   jury instruction states.  While it was not extreme

22   recklessness, it was reckless.  I think I noted at

23   the last hearing that even if the defendant did not

24   intend to shoot a person and kill that person, his

25   shooting at head level was certainly reckless.  And

1    again somebody died.

2            When I consider the nature and the

3    circumstances of the offense, you know, I can think

4    of a lot of offenses where a 72-year-old would

5    probably be, it would be appropriate for something

6    less than incarceration.

7            But under these circumstances, I believe

8    that the offense was of the most serious nature.

9    When people die, that is a most serious offense.

10            Now, I understand also when I consider the

11    nature and the circumstances of the offense, I know

12    this was at 1:00 in the morning.  I know that the

13    defendant was in his own home.  I know he was

14    awakened to what he thought may be a prowler.  But

15    still, when someone shoots a weapon capable of

16    killing someone, I think shooting at head level is

17    of the, as I have already said, of the most serious

18    order.

19            When I take into consideration the

20    defendant's history and characteristics, yes, he is

21    72, he has no criminal history, he has no other

22    conviction.  I know that he lives alone.  I know

23    that he has lived in the same home for many years.

24    I know that he has provided some information of

25    macular degeneration.  But at the time he was

1    interviewed by Probation, the PSR said he had no

2    known medical or mental health conditions.  So it

3    did not seem as though the macular degeneration was

4    anything that was disqualifying or impeding his

5    getting around.

6            I note that the medical records that were

7    provided suggested that the treatment for that was

8    glasses.  So, again, I am not seeing anything that

9    is beyond the Bureau of Prisons' ability to treat.

10            You know, as I look at the defendant's

11   age, I looked at the cases that were cited.  The

12   *White* case from the Tenth Circuit was not a case

13   where somebody died.  It was not an involuntary

14   manslaughter.  It was failing to update sex offender

15   registration.  I can envision many kinds of cases,

16   as I said earlier, where somebody who is age 72

17   could be appropriately punished short of a custodial

18   sentence and I suppose if the defendant was here on

19   a single count of failing to update his sex offender

20   registration, that I might consider a noncustodial

21   sentence.

22            The other cases that were cited are

23   certainly examples of someone's age being taken into

24   account in granting a variance, but once again, the

25   count of conviction was much different.

1          In the *Flemister* case, it was possession

2    and distribution of heroin and cocaine base.

3          In *Bellamy* it was conspiracy to distribute

4    heroin.  And in that case the individual was 69 and

5    in poor health where the defendant here does not

6    appear to be in poor health, though he is 72, but

7    again the cases that were provided are not similarly

8    situated defendants other than the fact of age.

9          So in looking at the 3553 factors, I look

10    at the need for the sentence imposed to reflect the

11    seriousness of the offense, promote respect for the

12    law and provide just punishment for the offense.

13          And I don't need to be overly repetitious,

14    but as I said already, MG died, was shot in the

15    temple.  Again, one of the most serious offenses,

16    that I think does call for punishment that includes

17    incarceration.

18          Deterrence, I, you know, I know there is a

19    disagreement.  The Government believes that

20    deterrence is a factor because the defendant has

21    shot at or near or at the time of other intruders on

22    his property.  I really don't know that deterrence

23    is a major issue for Mr. Smith.  I agree that he has

24    let us know that he has used his gun to scare other,

25    at least one other person away.

1          And, again, I think I pointed out last

2     time, I understand that he has property, it is in a

3     part of our State that, I guess, has more than its

4     fair share of drug problems and people that may be

5     passing through his property even though it is a

6     motel or was a motel.  It is not a motel that is

7     open for business and surely the people that he has

8     tried to chase off his property were not there

9     because they intended to rent a room from him.

10          So, you know, the deterrence is not one of

11     the weightier issues in my assessment of the 3553

12     factors.

13          Protection of the public from further

14     crimes of the defendant, he has a crime-free history

15     and so, I am concerned about protecting the public,

16     but it is not like the defendant has a history of

17     harming other people.  And this one crime, this one

18     conviction is serious, yes, but we would not have

19     allowed him to be out on conditions of release if I

20     felt that the public was in danger.

21          Looking at the kinds of sentences

22     available I do note that -- I have looked at the

23     guideline range, certainly that tells me about a

24     sentence, a range of incarceration that is

25     available.  I know the defense has asked for

1   probation.

2          The PSR says at Paragraph 59 that

3   probation is not permitted for a Zone D offense,

4   which is where this one -- I am not saying I would

5   grant probation anyway, I am just telling you that I

6   have considered what is available, what kinds of

7   sentences are out there.

8          I have considered the need to avoid

9   unwarranted sentencing disparities.  I frankly don't

10  see that imposing a low end guideline sentence

11  results in unwarranted sentencing disparities.

12         I know age is an issue, but even the cases

13  the provided by the defense do not address a

14  situation where someone died, involuntary

15  manslaughter.

16         So I looked at the age issue and, by the

17  way, I did note that there was discussion in some of

18  the materials about recidivism not being a major

19  concern for older inmates.  And my only observation

20  on that point is that when this crime was committed,

21  the defendant, I believe, was 68 years old.  So we

22  are already much older than what the materials would

23  tell us is a typical age for recidivism.

24         So my only point is, yes, the defendant is

25  72.  Yes, it is a hard row to hoe, I get that.  But

1    on the other hand he was 68 when he committed this
2    crime so it is not like he was a spring chicken when
3    the crime was committed.
4            So I am, so what I am saying is I have
5    given this very careful consideration.  I think that
6    taking everything into consideration, a custodial
7    sentence is the appropriate one for this case.  I
8    think that if the defendant doesn't seem to be
9    suffering any imminent medical conditions.  I know
10   that counsel has argued that the stress and the
11   burdens of incarceration could certainly lead to
12   deteriorating health.  And while I understand that,
13   at this point, anyway it is a bit speculative and if
14   that were to occur the BOP is well equipped to
15   handle medical issues.
16           And, secondly, I would assume knowing
17   defense counsel and how diligent they are, that if
18   something came along that would merit some motion or
19   early release, I would not be surprised to see such
20   a motion should there be sufficient support for it.
21           So those are my observations.  I am not
22   going to grant a variance based on age, and my
23   intention is to impose a low end guideline sentence
24   and recommend to BOP that they send him to a Federal
25   medical center and take into consideration his age.

1          Anything else before I pronounce sentence?

2          MS. WILSON:  Not from the Government.

3          Thank you, Your Honor.

4          MR. ELSENHEIMER:  Your Honor, if I may

5  only for purposes of the appeal and just for the

6  record, if I may.  We object to the sentence on both

7  procedural and substantive grounds.  We believe that

8  there are obvious reasons for a variance from the

9  sentencing guideline range, and imposing a guideline

10  sentence is not sufficiently taking into

11  consideration a lot of the factors that Your Honor

12  mentioned.  We believe those factors justify a

13  variance and on that ground we object to the

14  sentence.  But, otherwise, I just want to say that

15  for the record.

16          THE COURT:  Sure.  So at this time I will

17  invite you to the podium.

18          The last time we were together I heard

19  from everybody and I gave Mr. Smith an opportunity

20  to address the Court, which he did.  And if there is

21  anything else that you want to say, Mr. Smith, I am

22  happy to hear from you.

23          THE DEFENDANT:  I have nothing else to

24  say.

25          THE COURT:  All right.  So with that,

1    then, I will pronounce sentence.

2         The Court adopts the Presentence Report

3    Factual Findings.  The Court has considered the

4    sentencing guideline applications.  The Court has

5    also considered the sentencing factors that are set

6    forth at 18 United States Code Section 3553(a)(1)

7    through (7).

8         The offense level is 18 and the criminal

9    history category is 1.  The guideline imprisonment

10   range is 27 to 33 months.

11        The Court notes the defendant fired four

12   shots at MG, striking her in the temple causing her

13   death.

14        So as to indictment 1:18-CR-03495-001 JCH,

15   the defendant, Douglas D. Smith is committed to the

16   custody of the Bureau of Prisons for a term of 27

17   months.

18        The Court will recommend to the Bureau of

19   Prisons that the defendant serve his sentence at a

20   Federal medical center.

21        The Court will also recommend to the

22   Bureau of Prisons that in classifying him, the Court

23   recommends the most minimal status of confinement

24   that the defendant qualifies for.  And also

25   recommends that the Bureau of Prisons take into

account the defendant's age, both in his confinement
and also in any programming.

The defendant is placed on supervised
release for a term of two years.  The defendant must
comply with the mandatory and standard conditions of
supervision.  The following special conditions will
also be imposed.

You must complete 40 hours of community
service during your term of supervised release.  The
probation officer will supervise your participation
in the program by approving the program, which
agency, which location, frequency of participation,
et cetera.  You must provide written verification of
completed hours to the probation officer, and this
condition is imposed in lieu of a fine.

You must submit to substance abuse testing
to determine if you have used a prohibited
substance.  Testing shall not exceed more than 60
tests per year and testing may include urine
testing, wearing of a sweat patch and/or any form of
prohibited substance screening or testing.  You must
not attempt to obstruct or tamper with the substance
abuse testing methods.  You may be required to pay
all or a portion of the cost of the testing.

You must submit to a search of your

29

1    person, property, residence, vehicle, papers,

2    computers, other electronic communications or data

3    storage devices or media or office under your

4    control.

5            The probation officer may conduct a search

6    under this condition only when reasonable suspicion

7    exists, in a reasonable manner, and at a reasonable

8    time for the purpose of detecting firearms, deadly

9    weapons, illegal substances or illegal contraband.

10           You must inform any residents or occupants

11   that the premises may be subject to a search.

12           You must not use or possess alcohol.  You

13   may be required to submit to alcohol testing that

14   may include urine testing, a remote alcohol testing

15   system and/or an alcohol monitoring technology

16   program to determine if you have used alcohol.

17           Testing shall not exceed more than four

18   tests per day.

19           You must not attempt to obstruct or tamper

20   with the testing methods.  You may be required to

21   pay all or a portion of the cost of the testing.

22           You must not knowingly purchase, possess,

23   distribute, administer or otherwise use any

24   psychoactive substances including, for example,

25   synthetic cannabinoids, synthetic cathinones,

1  et cetera, that impair your physical or mental

2  functioning whether or not it is intended for human

3  consumption.  These conditions are imposed due to

4  the nature of the instant offense and the

5  defendant's restrictions from possessing firearms,

6  and ammunition as well as his history of alcohol and

7  marijuana use.

8          You must not communicate or otherwise

9  interact with the victim's family in this case,

10  either directly or through someone else without the

11  prior approval of the probation officer.  And this

12  condition is imposed to protect the victim's family

13  from any unwanted contact.

14          The Court finds that the Mandatory

15  Restitution Act of 1996 is applicable in this case,

16  however, no claim for restitution has been made by

17  the victim's family in this case, therefore, none

18  will be ordered.

19          Based on the defendant's lack of financial

20  resources, the Court will not impose a fine or a

21  portion of a fine, however, in accordance with U.S.

22  Sentencing Guideline Section 5E1.2(e), the Court has

23  imposed as a special condition that the defendant

24  complete community service.

25          The Court concludes that the total

1  combined sanction without a fine or alternative

2  sanction, other than the completion of -- the

3  defendant's completion of community service is

4  sufficiently punitive.

5         The defendant will pay a special

6  assessment of $100, which is due immediately.

7         The Court will permit voluntary surrender

8  in this case.  The defendant is not a flight risk or

9  a danger to the community, so voluntary surrender

10 will be granted.

11        And lastly pursuant to 18 United States

12 Code Section 3742(a), within four days of the entry

13 of judgment, you have the right to appeal the final

14 sentence of this Court.  You have the right to apply

15 for leave to appeal in forma pauperis if you are

16 unable to pay the cost of an appeal.

17        So with that I will ask counsel, is there

18 any reason that sentence should not be imposed as I

19 have stated it?

20        Ms. Wilson?

21        MS. WILSON:  No, Your Honor, not from the

22 Government.  Just a question clarification, though.

23 I know you did mention that self-surrender is

24 available.  Is there a time period associated with

25 that?

1          THE COURT:  Good point.  I will ask you to
2    report to the U.S. Marshals Service immediately
3    after this proceeding in order to make arrangements.
4    Typically I require self-surrender in about a 60-day
5    period.
6          Is that what would you recommend?
7          THE PROBATION OFFICER:  Yes, Your Honor,
8    probation would recommend 60 days.
9          THE COURT:  So I will recommend 60 days.
10         MR. ELSENHEIMER:  And just can I clarify,
11   it will be self-surrender at the facility that he is
12   designated, correct?
13         THE COURT:  Well, I believe that he would
14   work with the Marshals Service on that.
15         MR. ELSENHEIMER:  That is usually my
16   experience as well.
17         Can I ask in terms of the recommendation
18   of FMC, Federal Medical Center, could the Court also
19   include in that recommendation if the Bureau of
20   Prisons can't comply with that, that they notify the
21   Court?  I ask for that because that way we would be
22   able to be aware of it and could make sure that
23   whatever facility he is going to has Mr. Smith's
24   medical records and things like that.  I am told to
25   ask to include that, it is something for the BOP.

1    That is when we get notification before he is

2    designated.

3              THE COURT:  All right.  So what you are

4    saying is you want it to include language that if

5    the defendant, I mean, if the Bureau of Prisons is

6    unable to place the defendant at a Federal medical

7    center, that you want the Bureau of Prisons to let

8    the Court know?

9              MR. ELSENHEIMER:  Yes.

10             THE COURT:  I am agreeable to that.

11             MR. ELSENHEIMER:  Thank you.

12             MS. WILSON:  I think that is fine.  With

13   my communication from the BOP, it seems to me that

14   if there is specific language related to the types

15   of issues that are age-related macular degeneration,

16   for example, and now this SVT that is arising, that

17   that is something that they would be cognizant of so

18   perhaps the order could include those concerns that

19   we have now.

20             THE COURT:  That is a good suggestion.

21   The reason that I am recommending the Federal

22   medical center, we will put in there not only age

23   but also medical conditions of macular degeneration.

24   And I don't know exactly whether to label, what

25   specifically to label the heart issue as, but as

1    long as I indicate that there is a heart issue that

2    we want treated, I think that should suffice.

3                MR. ELSENHEIMER:  I think so.

4                THE COURT:  All right.  I will do that,

5    yes.

6                Anything else, then?  Any other

7    suggestions before I --

8                MR. ELSENHEIMER:  I didn't answer your

9    main question.  Aside from the objections we have

10   already made for the record, no.

11               THE COURT:  All right.  So with that,

12   then, the Court will order sentence imposed as

13   stated.

14               And I wish you good luck, Mr. Smith, and

15   we'll be in recess.

16               (Proceedings concluded at 2:25 p.m.)

17

18

19

20

21

22

23

24

25

1              REPORTER'S CERTIFICATE

2         I certify that the foregoing is a correct

3    transcript from the record of proceedings in the

4    above-entitled matter.  I further certify that the

5    transcript fees and format comply with those

6    prescribed by the Court and the Judicial Conference

7    of the United States.

8    Date:  November 10, 2022

9

10                   _____

11                   PAUL BACA, RPR, CCR
                     Certified Court Reporter #112
12                   License Expires:  12-31-2023

13

14

15

16

17

18

19

20

21

22

23

24

25